Gregory Lee JENSEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–00–00476–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 10, 2002.

Rehearing Overruled Feb. 7, 2002.

David Alan Disher, Houston, for appellants.

Joel H. Bennett, Galveston, for appellees.

Panel consists of Justices EDELMAN, FROST, and MURPHY.*

## OPINION ON MOTION FOR REHEARING

KEM THOMPSON FROST, Justice.

We overrule appellant Gregory Lee Jensen's motion for rehearing. We withdraw this court's opinion of October 11, 2001, and we issue this opinion in its place.

A jury convicted appellant of aggravated sexual assault of a child.[1] In ten points of error, appellant challenges his conviction on grounds of legal insufficiency, ineffectiveness of counsel, and erroneous evidentiary rulings. We affirm.

## I. FACTUAL BACKGROUND

Appellant lived with his then-girlfriend, Jacque Stoddard, Jacque's son and daughter, ages six and three, and the couple's four-month-old baby. On the date of the alleged offense, Jacque went to work in the morning, and appellant and the two older children set out for the beach that afternoon. The exact time at which appellant and the children arrived home is disputed. Appellant claims they did not go home before picking up Jacque from work. Appellant's mother and grandmother testified that he came by the family business to get the baby sometime between 2:00 p.m. and 3:30 p.m. Around 5:00 p.m., appellant drove Jacque home from work. Jacque prepared dinner and told the children to change into their pajamas. Appellant left the home to take a ride during this period. After changing clothes, the three-year-old complainant ("K.B.") brought the swimsuit she had been wearing to her mother. The swimsuit was soiled with blood in the crotch area. Jacque testified that K.B. told her appellant had put his finger "down there" and that it hurt.

Upon hearing this statement from her young daughter, Jacque paged appellant, called appellant's grandfather to take her to the hospital, and locked the door to their home. When appellant arrived, he and Jacque exchanged words through the

---

\* Senior Chief Justice Paul C. Murphy sitting by assignment.

1. *See* TEX. PEN.CODE ANN. § 22.021(a)(1)(B) (Vernon 1994 & Supp.2001).

locked door. Appellant's grandfather arrived, and Jacque took the three children to his truck. Appellant approached the truck and took the oldest child out of the vehicle. When the grandfather refused to take Jacque to the hospital emergency room, she got out of the truck and ran to a nearby liquor store, where she called "911." Appellant fled the scene.

Officers Williams, Smart and McClane responded to Jacque's call and arrested appellant shortly after their arrival. Officer McClane testified that when appellant approached the apartment, he stated to Jacque, "Why are you accusing me of this? You're going to ruin everything. All I did was stick my finger in her butt with her bathing suit on." After appellant left with the officers, Jacque took K.B. to the hospital for an examination. A follow-up exam the next day revealed bruising beneath the hymen and on the hymen itself; an exam of the anus showed redness as well as irregularity and thickness of the folds of the anus.

The State charged appellant with aggravated sexual assault of a person less than fourteen years old, and not the appellant's spouse, alleging appellant had placed his finger in K.B.'s female sexual organ. *See* TEX. PEN.CODE ANN. § 22.021(a)(1)(B)(i) (Vernon 1994 & Supp.2002). Appellant pleaded not guilty. The jury found appellant guilty as charged in the indictment. The trial court assessed punishment at forty years' confinement.

## II. ISSUES AND ANALYSIS

### A. Legal Sufficiency

 In appellant's third point of error, he contends the evidence is legally insufficient to support his conviction. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Jackson v.*

*Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App.1996). We give great deference " 'to the responsibility of the trier of fact [to fairly] resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Clewis,* 922 S.W.2d at 133 (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781). We presume that any conflicting inferences from the evidence were resolved by the jury in favor of the prosecution, and we defer to that resolution. *Id.* at 148 (citing *Jackson,* 443 U.S. at 326, 99 S.Ct. 2781). In our review, we determine " 'whether … *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* at 128–29 (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781).

The essential elements of aggravated sexual assault of a child are outlined in Texas Penal Code section 22.021. A person commits an offense "if the person intentionally or knowingly … causes the penetration of the anus or female sexual organ of a child by any means … and … the victim is younger than 14 years of age." TEX. PEN.CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B). The definition of "child" is the same as that listed in Texas Penal Code section 22.011(c). TEX. PEN.CODE ANN. § 22.021(b) (Vernon 1994 & Supp.2002). In that section, "child" refers to anyone younger than 17 years who is not the actor's spouse. TEX. PEN.CODE ANN. § 22.011(c)(1) (Vernon 1994 & Supp. 2002). Aggravated sexual assault is a first degree felony offense. TEX. PEN.CODE ANN. § 22.021(e) (Vernon 1994 & Supp.2002).

 After conducting a thorough review of the evidence, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that appellant committed the offense alleged in his felony

indictment. The complainant testified in the videotape that "he put his finger in my (inaudible) and make [sic] blood." When asked who touched her private part, K.B. answered, "Daddy."[2] In her live testimony, the State asked K.B. if appellant had ever touched her in a way that hurt. She responded affirmatively and said that it happened "by holding my private part." She later illustrated the touching by pointing to the private parts of a doll. The prosecutor then asked her what appellant touched her with and whether she had said it was his middle finger. She responded affirmatively. "The testimony of a victim[,] standing alone, even when the victim is a child, is sufficient to support a conviction for sexual assault." *Ruiz v. State,* 891 S.W.2d 302, 304 (Tex.App.—San Antonio 1994, pet. ref'd) (citing *Villalon v. State,* 791 S.W.2d 130 (Tex.Crim.App.1990)). Moreover, Jacque, the outcry witness, stated that after K.B. showed her the blood on the swimsuit's crotch area, K.B. told her, "Daddy put his finger down there." This type of outcry statement from a child victim, by itself, can be sufficient to sustain a conviction for aggravated sexual assault. *Rodriguez v. State,* 819 S.W.2d 871, 873 (Tex.Crim.App.1991). Joy Blackmon, a physician's assistant in the University of Texas Medical Branch (UTMB) Department of Pediatrics, who serves as the clinical coordinator of the ABC Clinic, performed a follow-up exam on K.B. the day after the incident. Blackmon testified that

the examination revealed bruising inside the genital area beneath the hymen as well as bruising on the hymen. She also testified that K.B.'s anus appeared red and that the rugae, which are the folds to the anus, were asymmetric and irregular looking. Blackmon stated that these findings were consistent with the medical history she had received. Dr. James Lukefahr, a pediatrician at UTMB and the medical director of the ABC Clinic, testified that he reviewed the exam records shortly after the exam and again before he came to court. He noted bruise-like findings "very clearly" evident in several locations in and around the hymen.

From this evidence a rational trier of fact could have concluded, beyond a reasonable doubt, that appellant committed the offense of aggravated sexual assault of a child. Therefore, we overrule appellant's third point of error.

### B. Admission of Videotape

Appellant's first, sixth, and seventh points of error challenge the trial court's rulings on the admissibility of the complainant's videotaped testimony at trial.

#### 1. Hearsay

■ In his first point of error, appellant contends the trial court erred when it admitted the videotaped testimony of K.B. because it was hearsay.[3] Appellant relies

---

2. In the videotaped testimony, K.B. stated that her daddy's name is "Barnhart." Appellant is not her biological father. However, K.B.'s mother testified that K.B. was two weeks old when she and K.B.'s biological father separated and that K.B. did not know her biological father prior to the time of the incident. According to Jacque's testimony, appellant is the only person K.B. called "Daddy."

3. Texas Rule of Appellate Procedure 38.1(h) provides that the "brief must contain a clear

and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP. P. 38.1(h). Conclusory arguments which cite no authority present nothing for our review. *See Vuong v. State,* 830 S.W.2d 929, 940 (Tex.Crim.App. 1992); *Atkins v. State,* 919 S.W.2d 770, 774–75 (Tex.App.—Houston [14th Dist.] 1996, no pet.). Appellant briefly cited to the record, indicating the objection on the grounds of hearsay and the trial court's overruling of the objection. However, he offered no argument or analysis to support his contention nor did

on the decision of the Texas Court of Criminal Appeals in *Matz v. State* as his only authority for error.

Appellant contends the court, in *Matz v. State*, held the videotape was hearsay. 14 S.W.3d 746, 747 (Tex.Crim.App.2000). That is not an accurate reading of the *Matz* case. Rather, the *Matz* court found that the lower court misunderstood the basis for appellant's complaint about admission of videotaped testimony. *Id.* Stating that the appellant objected to the form and not the substance of the videotape, the Court of Criminal Appeals held that the lower court erred when it found he failed to preserve error because he did not object to live testimony. *Id.* The *Matz* court limited its holding to the issue of preservation of error and remanded for a determination of the merits. *Id.; see also Matz v. State*, 21 S.W.3d 911, 912 (Tex.App.—Fort Worth 2000, pet. ref'd).

We find no merit in appellant's argument. Although not asserted in appellant's brief, a plain-language reading of article 38.071 of the Texas Code of Criminal Procedure indicates that the trial court may have erred in admitting the videotape. *See* Tex.Code Crim. Proc. Ann. art. 38.071 (Vernon Pamph.2002). The statute states that "this article applies only to a proceeding in the prosecution of an offense … if the offense is alleged to have been committed against a child 12 years of age or younger and if the trial court finds that the child is *unavailable* to testify at the trial of the offense." *Id.* art. 38.071, § 1. Here, K.B. testified in court following the viewing of the videotape.

When the Second Court of Appeals initially heard the *Matz* case, it assumed, without holding, that the trial court erred in admitting the tape based on the language in article 38.071. *Matz*, 21 S.W.3d at 912. On remand from the Court of Criminal Appeals, the Second Court of Appeals found that, even if the trial court erred in admitting the videotape, the error did not affect appellant's substantial rights. *Id.* at 912–13. The facts of *Matz* are similar to those now before this court. The appellant in *Matz* contended that the trial court erred in admitting a videotape of an alleged child victim on the grounds of hearsay. *Id.* at 911. Applying a harm analysis under Texas Rule of Appellate Procedure 44.2(b), the court found that the child's admissible live testimony corroborated the videotape and that therefore the trial court's error could be disregarded. *Id.* at 912–13. Under Rule 44.2(b), "any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex.R.App. P. 44.2(b). The court stated that "it is well-established that the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence." *Matz*, 21 S.W.3d at 912.

■ K.B.'s live testimony did not differ substantially from the facts revealed in the videotape. In the videotape, K.B. stated that "Daddy's at jail" and later that "he put his finger in my (inaudible) and make [sic] blood." When asked who touched her private part, K.B. answered, "Daddy." In her live testimony, the State asked K.B. if appellant had ever touched her in a way that hurt. She responded affirmatively and said that it happened "by holding my private part." She later pointed to the private parts of a doll. She testified appellant had touched her with his middle finger. She then identified appellant in the

---

he apply the facts of the case to the rule of evidence. *See Wyatt v. State*, 23 S.W.3d 18, 25 n. 7 (Tex.Crim.App.2000); *King v. State*, 17 S.W.3d 7, 23 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd).

courtroom when asked by the State if he was sitting over against the wall away from her. As in *Matz*, even if the trial court erred in allowing the videotape, the error "does not affect substantial rights" under Rule 44.2(b) because the same information came in elsewhere. *See* Tex.R.App. P. 44.2(b); *Matz*, 21 S.W.3d at 912–13. Therefore, we overrule appellant's first point of error.

### 2. Admonishment to Tell the Truth

In his sixth point of error, appellant contends the trial court erred when it failed to adhere to Texas Code of Criminal Procedure article 38.071, section 5(a)(10). However, article 38.071 does not apply to this case because the child victim testified at trial. Moreover, even if that provision had come into play, appellant's argument nonetheless lack merit.

According to Texas Code of Criminal Procedure article 38.071, section 5(a), the trial court must find that several requirements have been "substantially satisfied" for a recording of a child's oral statement to be admissible into evidence. Tex.Code Crim. Proc. Ann.art. 38.071, § 5(a) (Vernon Pamph.2002). The requirement on which appellant relies states:

> before giving his testimony, the child was placed under oath or was otherwise admonished in a manner appropriate to the child's age and maturity to testify truthfully.

*Id.* § 5(a)(10).

■ Appellant's trial objection did not preserve error on the grounds of admonishment. Appellant's trial attorney first objected on the grounds of competency and then explained his objection using terms also associated with admonishment. When asked by the State to clarify his objection—whether it was to competency or admonishment—appellant's trial attorney stated his objection went to competen-cy. A separate subsection under section 5(a) addresses the requirement of the child's competency to testify. *Torres v. State*, 33 S.W.3d 252, 254 (Tex.Crim.App. 2000). Specifically, section 5(a)(11) requires a finding that the child was competent to testify at the time of the videotaped testimony, a requirement which includes the witness's understanding of the responsibility to speak truthfully. *Id.* at 254–55 (citing *Watson v. State*, 596 S.W.2d 867, 870 (Tex.Crim.App.1980)). "A showing that the witness was competent and had an understanding of the responsibility to tell the truth does not satisfy the separate requirement that the witness be placed under oath or an admonishment be given." *Id.* at 255.

■ Appellant's brief acknowledges the error, stating that when he was asked about the basis of his objection, "he should have said 'both' [meaning competency and admonishment] as he was invited to do so by the prosecutor." To properly preserve an issue for appellate review, there must be a timely objection that specifically states the legal basis for the objection. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim.App.1990). An objection stating one legal basis may not be used to support a different legal theory on appeal. *Id.* Instead, the trial objection must have drawn the court's attention to the particular complaint later raised on appeal. *See Little v. State*, 758 S.W.2d 551, 564 (Tex.Crim.App. 1988). The complaint appellant now raises does not comport with the objection he voiced at trial. Therefore, we find appellant has waived error on the issue of admonishment.

■ Moreover, as discussed under the hearsay section, *supra*, K.B.'s live testimony does not differ substantially from the facts set forth in the videotape. Thus, even if the trial court erred in admitting

the videotape, appellant's substantial rights were not affected. *See Matz*, 21 S.W.3d at 912–13. We overrule appellant's sixth point of error.

### 3. Competency

■ In his seventh point of error, appellant contends the trial court erred when it found K.B. competent to testify in the videotape. As with the issues of hearsay and admonishment, even if the trial court erred when it admitted the videotape, K.B. testified at trial to substantially the same facts she recounted in the videotaped testimony. On this point, the *Matz* court found that "[b]ecause the videotape is cumulative of [the complainant's] properly admitted testimony on the same issue, even if the trial court erred in admitting the videotape, we must disregard the error because it could not have affected appellant's substantial rights." *Id.* Applying the same harm analysis, we find appellant's substantial rights were not violated by the admission of the videotaped testimony. *See* Tex.R.App. P. 44.2(b). Accordingly, we overrule appellant's seventh point of error.

### C. Evidentiary Rulings

In his fourth, eighth, and ninth points of error, appellant challenges evidentiary rulings of the trial court. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Mozon v. State*, 991 S.W.2d 841, 846–47 (Tex. Crim.App.1999). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990). In determining whether the trial court abused its discretion, we consider whether the court acted without reference to guiding rules and principles; that is, whether the court acted arbitrarily or unreasonably. *Lyles v.*

*State*, 850 S.W.2d 497, 502 (Tex.Crim.App. 1993). However, there is no abuse of discretion merely because a trial court may have decided a matter within its discretionary authority differently than a reviewing court in a similar circumstance. *Aguilar v. State*, 29 S.W.3d 268, 270 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

### 1. Evidence of Third Party's Motive to Commit Crime

In his eighth point of error, appellant contends the trial court abused its discretion when it excluded evidence that K.B.'s maternal grandfather, Michael Stoddard, had an alleged history of sexually abusing his daughter, Jacque. Appellant argues the evidence was relevant and, therefore, admissible to suggest the maternal grandfather had motive and opportunity to commit the crime.

■ Evidence regarding a third party's motive to commit the crime with which the accused is charged is inadmissible unless other evidence linking the third person to the crime is proffered. *Easley v. State*, 986 S.W.2d 264, 268 (Tex.App.—San Antonio 1998, no pet.) (citing *Spence v. State*, 795 S.W.2d 743, 754 (Tex.Crim.App. 1990)); *Williams v. State*, 643 S.W.2d 477, 483 (Tex.App.—Austin 1982, no pet.). This "other evidence" must be testimony which not only demonstrates the third person's opportunity to commit the crime, but also incriminates that person as the culprit. *Spence*, 795 S.W.2d at 755 (citing *Porch v. State*, 50 Tex.Crim. 335, 99 S.W. 102, 106 (1906)).

■ In an offer of proof outside the jury's presence, appellant presented the testimony of two witnesses—his mother, Susie Read, and Jacque's co-worker, Kathi Flisowski, who worked at the dry cleaning business of appellant's family. Read testified that Jacque mentioned twice that her father had molested her as a child and that

this was one of the reasons Jacque's mother left him and took the children out of state. Read also testified that Jacque told her that Michael Stoddard did not like K.B. and that he favored M.B., K.B.'s brother. The second witness, Kathi Flisowski, testified that on one occasion Jacque told her that Jacque's mother had left with the children because Jacque's father had "messed around" with them. On cross-examination, Flisowski testified that Jacque never specifically said that her father had sexually molested her and never said what she meant by "messed around." When Jacque testified, she denied having had these conversations, stating that a family friend in Idaho had sexually molested her, not her father.

At the motion for new trial hearing, appellant testified that K.B. spent the weekend before the incident in question at the home of Michael Stoddard. Appellant's trial counsel presented no evidence incriminating Michael Stoddard as the culprit. The testimony speaks only to the possibility that Jacque was sexually molested by her father. The fact that he could have done the same to K.B. is never mentioned in any of this testimony. Appellant's own testimony at the motion for new trial hearing may have established opportunity, but it certainly did not incriminate Michael Stoddard as the culprit. For these reasons, we find the trial court did not abuse its discretion in refusing to admit evidence regarding Michael Stoddard's alleged abuse of Jacque. Accordingly, we overrule appellant's eighth point of error.

**2. Testimony of Rebuttal Witness**

■ In his ninth point of error, appellant contends the trial court abused its discretion when it admitted testimony of the State's rebuttal witness, Trudy Davis, because the testimony did not rebut any defensive evidence. Instead of addressing *this* issue in his argument, appellant focuses on several other issues, arguing that Davis's testimony did not assist the jury and that it was bolstering. Because appellant's sole objection at trial was that Davis's testimony did not rebut any defensive evidence, the other issues discussed in appellant's brief under this point of error are not properly before this court. *See* Tex.R.App. P. 33.1. An error presented for review on appeal must comport with the objection raised at trial or the error is not preserved. *See id.; Blevins v. State,* 18 S.W.3d 266, 270 (Tex.App.—Austin 2000, no pet.) (citing *Goff v. State,* 931 S.W.2d 537, 551 (Tex.Crim.App.1996)). Therefore, we will address only the issue of rebuttal.

■ According to the record, the State did not call Davis for the purpose of explaining K.B.'s testimony, but to show that those around K.B. and appellant could not detect a sexual relationship by mere observation. Appellant's trial counsel asked several witnesses whether the children and appellant were acting normally the day of the incident. First, in questioning Jacque, appellant's trial counsel asked whether she had noticed anything out of the ordinary when she had lunch with appellant and the children. Counsel further questioned Jacque about how the children were acting when appellant picked her up from work and whether anything seemed unusual. Counsel asked similar questions of Connie Read, appellant's grandmother, who saw appellant and the children in the early morning before they went to the beach. Appellant's counsel asked how everyone was acting that day and whether Read remembered anything out of the ordinary in K.B.'s behavior. Appellant's counsel also asked similar questions of appellant's mother and Kathi Flisowski. All four witnesses testified that they did not notice anything out of the ordinary.

During the State's rebuttal case, Davis testified that even those closest to a perpetrator and victim could not discern a sexual relationship merely from observing their behavior. Appellant points to *Duckett v. State* and argues that, unlike *Duckett*, the testimony of the complainant here was not so thoroughly dismantled on cross-examination that Davis's testimony would be needed to explain K.B.'s behavior to the jury. *See* 797 S.W.2d 906 (Tex.Crim.App. 1990). Contrary to appellant's contention, this testimony speaks directly to the questions asked of the witnesses. On rebuttal, the prosecution is entitled to present any evidence that tends to refute the defensive theory of the accused and the evidence introduced in support of it. *Laws v. State*, 549 S.W.2d 738, 741 (Tex.Crim.App.1977); *see Flannery v. State*, 676 S.W.2d 369, 370 (Tex.Crim.App.1984); *Rucker v. State*, 121 Tex.Crim. 94, 50 S.W.2d 305, 306 (1932). Therefore, the trial court did not abuse its discretion in admitting Davis's testimony as rebuttal evidence. We overrule appellant's ninth point of error.

### 3. Admissibility of Evidence of Extraneous Acts

In his fourth point of error, appellant contends the trial court erred when it allowed into evidence extraneous acts of his physical and emotional abuse against Jacque.

The Texas Rules of Evidence provide that evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Evid. 401. All relevant evidence is admissible, except as otherwise prohibited by law. *See* Tex.R. Evid. 402. By contrast, all evidence that is deemed irrelevant is inadmissible. *See id.* Evidence of extraneous acts is admissible to rebut defensive theories raised during cross-examination of the State's witnesses. *Webb v. State*, 36 S.W.3d 164, 180 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (citing *Ransom v. State*, 920 S.W.2d 288, 301 (Tex.Crim.App.1994)). Once a matter is introduced into the proceeding, evidence to fully explain the matter is relevant and admissible, even though the evidence might otherwise have been inadmissible. *Gilbert v. State*, 874 S.W.2d 290, 297 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). However, introducing evidence of other crimes, wrongs, or acts for a purpose other than character conformity does not, by itself, make that evidence admissible. *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim.App.1996). This evidence must also be relevant to a "fact of consequence" in the case. *Id.; Owens v. State*, 827 S.W.2d 911, 914 (Tex.Crim.App.1992).

Appellant argues the State was trying to paint him as a criminal to prove its case when it brought in evidence of his extraneous acts of abuse against Jacque. The State contends that appellant "opened the door" to the introduction of this evidence during his cross-examination of Jacque by asking her about the couple's "rocky" relationship, whether the children were scared of appellant, why she left appellant and about their custody battle. The State claims that, in doing so, appellant tried to establish motive and bias for Jacque to lie about what happened to K.B.

The State called Jacque, appellant's former common law wife, as the outcry witness. On recross-examination, appellant's trial counsel asked Jacque, "Isn't it true that during the entire course of the time that you've been together with Greg Jensen it's been kind of a rocky relationship?" Before she could answer, the State asked to approach the bench. Outside the jury's presence, appellant's trial counsel argued that he had not "opened the door" to evi-

dence of abuse by asking about the couple's rocky relationship. The State asserted that this question did open the door. Before ruling, the trial court asked appellant's counsel to proceed with his questioning. Appellant's trial counsel did so in the jury's presence. Afterward, the trial court again asked the jury to leave, and counsel discussed the matter of "opening the door." Appellant's trial counsel argued that evidence of appellant's abuse of Jacque was irrelevant to the case before the court, and that this evidence would be more prejudicial than probative. In overruling defense counsel's objection, the trial court stated, "You asked about the rocky relationship. If that's not going into what kind of arguments they had, I don't know what is."

When Jacque's testimony resumed on redirect examination, the State asked her if she felt limited in her ability to answer questions posed to her by appellant's trial counsel. Appellant's trial counsel again objected on the basis that the State was attempting to bring in evidence of extraneous offenses that was irrelevant and prejudicial. He then made a running objection to any incidents that the State would offer regarding appellant's abuse of Jacque. The trial court overruled the objection. Once testimony resumed, Jacque began testifying to the alleged abuse. After part of the evidence came in, appellant's trial counsel objected a third time on the grounds of relevancy and prejudice. The trial court again overruled the objection. The State then asked the witness about her "rocky relationship" with appellant without objection from appellant's trial counsel. The trial court specifically instructed the jury to disregard testimony about other offenses unless they found, and believed beyond a reasonable doubt, that appellant had committed these other offenses and, then, only as they related to the relationship among Jacque, K.B. and appellant.

By cross-examining Jacque about her "rocky relationship" with appellant, whether the children were scared of appellant, why she left appellant, and the custody battle between them, appellant opened the door to evidence of other crimes, wrongs, and acts of appellant. The trial court did not abuse its discretion by allowing the State to fully develop the nature of the relationship between appellant and Jacque and the children through the introduction of evidence that appellant had physically and emotionally abused Jacque.

Appellant also argues that the prejudicial effect of evidence of extraneous offenses outweighed its probative value. Under Rule 404(b) of the Texas Rules of Evidence,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX.R. EVID. 404(b).

The Texas Court of Criminal Appeals has explained that Rule 404(b) requires a balancing of certain factors to determine whether character evidence is admissible under Texas Rule of Evidence 403. *See Mozon v. State*, 991 S.W.2d 841, 846 (Tex. Crim.App.1999); *Montgomery v. State*, 810 S.W.2d at 372, 377 (Tex.Crim.App.1990). Under Rule 403, evidence, although relevant, may yet be excluded "if its probative value is substantially outweighed by the

danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex.R. Evid. 403.

In evaluating the trial court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon,* 991 S.W.2d at 847 (citing *Montgomery,* 810 S.W.2d at 389). The trial court is in a superior position to evaluate the impact of the evidence. *Montgomery,* 810 S.W.2d at 379. The reviewing court, however, cannot simply conclude that "the trial judge did in fact conduct the required balancing and did not rule arbitrarily or capriciously." *Mozon,* 991 S.W.2d at 847. The trial court's ruling must be measured against the relevant criteria by which a Rule 403 decision is made. *Id.* In other words, the reviewing court must look at the proponent's need for the evidence in addition to determining the relevance of the evidence. *Id.* The relevant criteria in determining whether the prejudice of an extraneous offense outweighs its probative value include the following:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant, in fact, committed the extraneous offense;

(2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way";

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense;

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute?

*Id.* at 847 (citing *Santellan v. State,* 939 S.W.2d 155, 169 (Tex.Crim.App.1997) (citing *Montgomery,* 810 S.W.2d at 389–90)).

Balancing the above factors in this case, the prejudice of the evidence of appellant's abuse of Jacque does not outweigh its probative value. The State questioned Jacque concerning the physical and emotional abuse by appellant to prove that Jacque was in an ongoing, abusive relationship that affected her children and that the children were scared of appellant. Appellant attempted to show that Jacque had only a few arguments with appellant and that the children were comfortable with him. Evidence of appellant's physical and emotional abuse of Jacque was necessary to complete the picture. Absent evidence of the abuse Jacque suffered at appellant's hands, the jury would not have a complete or accurate understanding of the facts. Thus, the trial court did not abuse its discretion in concluding that the danger of unfair prejudice did not substantially outweigh the probative value of this evidence. Accordingly, we overrule appellant's fourth point of error.

### D. Ineffective Assistance of Counsel

In his second and tenth points of error, appellant contends he was denied effective assistance of counsel at trial. Specifically, appellant claims his trial counsel was ineffective by (1) failing to object to, or challenge by motion, the qualifications of Trudy Davis, as an expert witness and (2) by opening the door to evidence of extraneous misconduct during the direct examination of Jacque.

To prove ineffective assistance of counsel, appellant must show that (1) his counsel's representation fell below an objective standard of reasonableness and (2) there exists a reasonable probability that, but for his counsel's unprofessional errors, the outcome would have been different. *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim.App.1986) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Appellant has the burden of proving his trial counsel was ineffective by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim. App.1999). Counsel's conduct is strongly presumed to fall within the wide range of reasonable professional assistance, and appellant must overcome the presumption that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 688–89, 104 S.Ct. 2052; *Thompson*, 9 S.W.3d at 813. To overcome this presumption, a claim for ineffective assistance of counsel must be firmly founded and affirmatively demonstrated in the record. *Thompson*, 9 S.W.3d at 813–14. The record is best developed by an application for a writ of habeas corpus or a motion for new trial. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex.Crim.App.1998); *Kemp v. State*, 892 S.W.2d 112, 115 (Tex.App.— Houston [1st Dist.] 1994, pet ref'd). In this case, the trial court held a hearing on the motion for new trial to give appellant the opportunity to develop a record to support his ineffectiveness claim.

### 1. Expert Witness

First, appellant contends that Trudy Davis was allowed to testify about child sexual abuse victims without objection to her qualifications in the field. Davis testified to her extensive background in the area of child abuse, stating that she had worked almost exclusively in the field. At the time of trial, Davis had served as the executive director of the Advocacy Center for Children of Galveston County for more than three years. Prior to holding that position, Davis was a case worker and supervisor for Children's Protective Services in Galveston County for eighteen years. In addition, she worked as a criminal investigator for the Galveston County District Attorney's office for two years. Davis, who holds a bachelor's degree in sociology and criminal justice, has testified in courts as an expert witness in the field of child abuse many times.

In this case, Davis testified to the difficulty of detecting sexual abuse of children by merely observing the interaction between individuals. She explained that a sexual relationship between the victim and perpetrator can be masked by normal behavior. She also explained that experts, as well as those who see the two individuals on a daily basis, could not detect the true nature of the relationship by mere observation.

A trial court has discretion whether to allow a witness to testify as an expert. *Steve v. State*, 614 S.W.2d 137, 139 (Tex.Crim.App.1981). If a witness has scientific, technical, or other specialized knowledge that will assist the trier of fact and is qualified as an expert by knowledge, skill, experience, training, or education, that witness may testify about his or her opinions. Tex.R. Evid. 702. Moreover, when a witness is an expert in a social science or a field that is based primarily on experience and training, we apply a less rigorous reliability test to the witness's theory than we apply to a witness's theory in a hard science. *See Nenno v. State*, 970 S.W.2d 549, 561 (Tex.Crim.App.1998), *overruled on other grounds by State v.*

*Terrazas,* 4 S.W.3d 720, 727 (Tex.Crim. App.1999). When addressing fields of study aside from the hard sciences, we ask the following questions: (1) whether the field of expertise is a legitimate one; (2) whether the subject matter of the expert's testimony is within the scope of that field; and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field. *See Nenno,* 970 S.W.2d at 561.

 The Court of Criminal Appeals has recognized research concerning the behavioral characteristics of sexually abused children as a legitimate field of expertise. *See Cohn v. State,* 849 S.W.2d 817, 818 (Tex.Crim.App.1993). In this case, Davis testified to the inability of experts and others to detect sexual abuse by merely observing the interaction and behavior of the victim and perpetrator. The record does not indicate whether Davis relied upon principles involved in the field, as required in part three of the three-part test set forth above.

To support his argument that Davis was not qualified to testify as an expert, appellant relies on a case from the First Court of Appeals. *See Perez v. State,* 25 S.W.3d 830 (Tex.App.—Houston [1st Dist.] 2000, no pet.). In that case, the State called Davis, the same witness at issue here, as a rebuttal witness to testify about the five stages of "child abuse accommodation syndrome." *Id.* at 832. The First Court of Appeals found the trial court erred when it allowed Davis to testify as an expert concerning the theories of Dr. Roland Summit, a pediatric psychiatrist. *Id.* at 838.

Appellant's reliance on *Perez* is misplaced. In *this* case, Davis did not mention any particular syndrome or scientific theory in her testimony nor did she refer to another expert on whom her opinions relied. The record does not indicate that Davis was interpreting another profession-al's theories about a syndrome, as was the case in *Perez.* In the court below, Davis testified to her credentials, and then the prosecution began its questioning. It is apparent from the record that Davis's opinions stemmed from her experiences working with child abuse victims. The court in *Perez* specifically stated in a footnote that it "expressed no opinion regarding Davis's qualifications to testify as an expert regarding her own observations and opinions, without reference to the opinions, observations, and theories of Dr. Summit." *Id.* at 838 n. 2.

Appellant has not demonstrated that the trial court would have sustained an objection to Davis's qualifications. Therefore, appellant has not met the burden of proving his trial counsel was ineffective for failing to object. Accordingly, we overrule appellant's tenth point of error.

### 2. "Opening the Door" to Evidence of Appellant's Abuse of Jacque

In appellant's second point of error, he contends his trial counsel was ineffective because he "opened the door" to evidence of appellant's extraneous misconduct during the guilt-innocence phase of the trial.

 When reviewing a claim of ineffective assistance of counsel under the first prong of *Strickland,* a strong presumption exists that defense counsel's conduct was reasonable and constituted sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. We evaluate the totality of the representation from counsel's perspective at trial, rather than counsel's isolated acts or omissions in hindsight. *Gutierrez v. State,* 8 S.W.3d 739, 749 (Tex.App.—Austin 1999, no pet.). Any error in trial strategy will be deemed inadequate representation only if counsel's actions lack any plausible basis. *Howland v. State,* 966 S.W.2d 98, 104 (Tex.App.—Houston [1st

Dist.] 1998), *aff'd*, 990 S.W.2d 274 (Tex. Crim.App.1999).

Appellant's trial counsel testified about his trial strategy at the motion for new trial hearing. In contention is a point during trial counsel's examination of Jacque, K.B.'s mother, when counsel asked whether Jacque's relationship with appellant was a "rocky" one. Later, during its examination of Jacque, the State followed up with an inquiry about abuse by appellant, arguing that appellant had "opened the door" to questioning on this subject. Appellant's trial counsel objected to the State's inquiry and argued that his question regarding the "rocky relationship" did not open the door to this topic for the State. The trial court overruled the objection and allowed the prosecution to question the witness about incidents of abuse. Jacque then described the physical, emotional, and mental abuse appellant had inflicted upon her during the time they were together.

Contrary to appellant's assertions that trial counsel was unable to explain his sound trial strategy, the record for the motion for new trial hearing reflects the following dialogue between appellant's counsel on appeal and his trial counsel:

Q: [Appellate Counsel] Did you have any kind of sound trial strategy for asking that question that the Court said opened the door?

A: [Trial Counsel] Yes, I did.

Q: What was that?

A: I was attempting to bring out the fact that [appellant's] relationship with [Jacque] had been on and off. It had been one where she had often left him—had come back to him and that on one or more of the occasions when she left him, very often allegations would be made, charges would be filed or whatever. And the strategy was to help show

that she might have some bias or some reason to fabricate the outcry statement which was extremely damaging to [appellant]. She was the outcry witness; and so, obviously I would want to challenge any potential bias that she might have that might have affected her making that statement.

 Appellant's appellate counsel then raised an alternate trial strategy, that of portraying appellant as a drug dealer, rather than a child molester. The fact that another attorney, including appellant's counsel on appeal, might have pursued a different course does not necessarily support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex.Crim.App. 1979); *Johnson v. State*, 987 S.W.2d 79, 88 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd). Appellant has the ultimate burden to overcome the presumption that defense counsel's conduct was reasonable. *Gutierrez*, 8 S.W.3d at 749. He must demonstrate not only that counsel's conduct was unreasonable under prevailing professional norms but also that the challenged action was not sound trial strategy. *Id.*

 Appellant has not proven by a preponderance of the evidence that trial counsel's representation fell below the standard of prevailing professional norms. *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996). Nor has appellant demonstrated that trial counsel did not possess a sound trial strategy. Therefore, appellant has not met the burden of proving the first prong of the *Strickland* test. Accordingly, we overrule appellant's second point of error.

### E. Motion for New Trial

In his fifth point of error, appellant challenges the trial court's denial of his motion for new trial. Appellant argues trial coun-

sel was ineffective and, therefore, the trial court abused its discretion by not granting the motion for new trial. More specifically, appellant contends that his trial counsel was unable to show any sound trial strategy for his "opening the door" to evidence of appellant's extraneous misconduct, an argument addressed and rejected in our previous discussion of appellant's second point of error. Appellant also contends the grounds for a new trial listed in Texas Rule of Appellate Procedure 21.3 are not exhaustive, citing for this proposition *Reyes v. State*, 849 S.W.2d 812, 814–15 (Tex.Crim.App.1993); *State v. Gonzalez*, 855 S.W.2d 692, 693–94 (Tex.Crim.App. 1993); *State v. Evans*, 843 S.W.2d 576, 578–79 (Tex.Crim.App.1992); and *State v. Read*, 965 S.W.2d 74, 77 (Tex.App.—Austin 1998, no pet.). Although these cases state that trial courts have discretion to grant motions for new trial on grounds other than those listed in the rule, they do not address the issue we must resolve.

▪ A trial court's ruling denying a defendant's motion for new trial is reviewed for an abuse of discretion. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex.Crim. App.2001). The ruling is presumed to be correct, and the burden rests upon the appellant to show otherwise. *Read*, 965 S.W.2d at 77 (citing *Lee v. State*, 167 Tex. Crim. 608, 322 S.W.2d 260, 262 (1958)). Appellant offers no argument, authority, or citation to the record to explain how the trial court in this case abused its discretion by denying his motion for new trial.

▪ Texas Rule of Appellate Procedure 38.1(h) provides that the "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP. P. 38.1(h). Appellant must direct the court to the specific portion of the record supporting the alleged error. *Huerta v. State*, 933 S.W.2d 648, 650 (Tex.

App.—San Antonio 1996, no pet.). Conclusory arguments which cite no authority present nothing for our review. *See Vuong v. State;* 830 S.W.2d 929, 940 (Tex. Crim.App.1992); *Atkins v. State*, 919 S.W.2d 770, 774–75 (Tex.App.—Houston [14th Dist.] 1996, no pet.). Because appellant's argument on this point of error contains no citations to the record, he has waived appellate review of his complaint. *See* TEX.R.APP. P. 38.1(h). Therefore, we overrule appellant's fifth point of error.

We affirm the trial court's judgment.