Affirmed and Memorandum Opinion filed March 30, 2004









Affirmed and Memorandum Opinion filed March 30, 2004.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00493-CR

____________

 

SHANNON DOUGLAS
WILLIAMS,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law no. 5

Harris County, Texas

Trial Court Cause No. 1159564

 



 

M E M O R A N D U M   O P I N I O N

The jury found appellant guilty of assault
and the trial court assessed punishment at confinement in the Harris County
Jail for one year.  In two issues,
appellant contends (1) the trial court abused its discretion in admitting
evidence of a prior assault, and (2) he was denied effective assistance of
counsel.  We affirm.

FACTUAL BACKGROUND








On February 20, 2003, the complainant
telephoned her parents from an apartment. 
She told her mother that appellant had been hitting her and asked her
mother to call 911.  She was disconnected
before she could tell her mother the address of the apartment.  A few minutes later complainant telephoned her
parents again and told her mother the address.

Two deputies were dispatched to the
apartment.  Appellant answered the door
and the deputies were able to see the complainant standing behind him.  She was visibly upset and injured.  Appellant admitted to striking the
complainant with his fist.

ANALYSIS

I.        Evidence
of an Extraneous Offense

In his first issue, appellant contends the
trial court abused its discretion in admitting testimony that appellant had
previously assaulted the complainant.[1]  The trial court admitted the testimony in
order to remedy an impression created by appellant=s
cross-examination that the complainant=s father was being
evasive and was racially biased against appellant.[2]








 We
review a trial court=s ruling on the admission of evidence for
an abuse of discretion.  See Weatherred
v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  A trial court abuses its discretion when its
decision is so clearly wrong as to lie outside that zone within which
reasonable persons might disagree.  Webb
v. State, 36 S.W.3d 164, 176 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d). 
A trial court is given wide latitude to admit or exclude evidence of
extraneous offenses.  Hudson v. State,
112 S.W.3d 794, 801 (Tex. App.CHouston [14th
Dist.] 2003, pet. filed).

Evidence of extraneous acts is admissible
to rebut defensive theories raised during cross‑examination of the State=s witnesses.  Jensen v. State, 66 S.W.3d 528, 539
(Tex. App.CHouston [14th Dist.] 2002, pet. ref=d).  Once a matter is opened up by the other
party, evidence to fully explain the matter is admissible, even though the
evidence might otherwise have been inadmissible.  Parr v. State, 557 S.W.2d 99, 102
(Tex. Crim. App. 1977); Jensen, 66 S.W.3d at 539. 








By repeatedly questioning the complainant=s father as to his
reason for disapproving of appellant, appellant opened the door to the
testimony that the disapproval was due to the prior offense.  See Jensen v. State, 66 S.W.3d
at 539B40 (asking a witness
whether a relationship was Arocky@ opened the door
to evidence of abuse); Gilbert v. State, 874 S.W.2d 290, 296B97 (asking a
police officer why he was familiar with a defendant opened the door to evidence
the officer had arrested the defendant for a narcotics violation).  The trial court did not abuse its discretion
in allowing the complainant=s father to answer
appellant=s questions.  We overrule appellant=s first issue.

II.       Ineffective
Assistance of Counsel

In his second issue, appellant contends he
was denied effective assistance of counsel. 
In particular, appellant argues his counsel was ineffective for (1)
failing to object to hearsay testimony by the complainant=s father as to
what she told her mother on the telephone, (2) failing to object to hearsay
testimony by the complainant=s father as to
what she told him, (3) failing to object to evidence of the extraneous offense,
and (4) asking the complainant=s father why he
did not approve of her relationship with appellant. 

To prove ineffective assistance of
counsel, a defendant must show that counsel=s performance fell
below an objective standard of reasonableness under prevailing professional
norms, and there is a reasonable probability that, but for counsel=s deficient
performance, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S.
668, 694 (1984); Rodriguez v. State, 899 S.W.2d 658, 664 (Tex. Crim.
App. 1995).  When reviewing a claim of
ineffective assistance of counsel, we must give much deference to trial counsel
and presume counsel made all significant decisions in the exercise of
reasonable professional judgment.  Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

A.      The
Telephone Conversation.








First, appellant contends trial counsel
was ineffective for failing to object to hearsay evidence regarding the
telephone call.  The complainant=s father was
allowed to testify as to double hearsay, namely statements made by the
complainant to her mother.[3]  Neither the complainant nor her mother
testified at trial.

The excited utterance exception to the
hearsay rule provides that A[a] statement
relating to a startling event or condition made while the declarant was under
the stress of excitement caused by the event or condition@ is not excluded
by the hearsay rule.  Tex. R. Evid. 803(2).  In order for the excited utterance exception
to apply, (1) the statement must be the product of a startling occurrence, (2)
the declarant must have been dominated by the emotion, excitement, fear, or
pain of the occurrence, and (3) the statement must be related to the
circumstances of the occurrence.  Jackson
v. State, 110 S.W.3d 626, 633 (Tex. App.CHouston [14th
Dist.] 2003, pet. ref=d); see also McFarland v. State,
845 S.W.2d 824, 846 (Tex. Crim. App. 1992), overruled on other grounds by
Bingham v. State, 915 S.W.2d 9, 14 (Tex. Crim. App. 1994).

The statements made by the complainant to
her mother meet the excited utterance exception to the hearsay rule.  The statements were the result of a startling
occurrance, being assaulted.  The
officers who responded testified that the complainant was still crying and
visibly upset when they arrived, indicating that she would have been dominated
by the emotion of the occurrence at the time of the telephone call.  Finally, all of her statements were related
to the circumstances of the occurrence.








The statements made by the complainant=s mother to the
complainant=s father also meet the excited utterance
exception to the hearsay rule.  The
statements were the result of a startling occurrence, receiving a telephone
call from her daughter that she was being assaulted.  The evidence indicates she was crying,
flushed, and upset as a result of receiving the telephone call, indicating that
she was dominated by the emotion of the occurrence.  Finally, her statements were related to the
circumstances of the occurrence.

Because the statements were admissible
under the excited utterance exception to the hearsay rule, trial counsel was
not ineffective for failing to object to them. 
See Thacker v. State, 999 S.W.2d 56, 67 (Tex. App.CHouston [14th
Dist.] 1999, pet. ref=d) (ATrial counsel is
not ineffective for failure to make meritless objections.@).

B.      The
Complainant=s Fear of Appellant.

Second, appellant contends trial counsel
was ineffective for failing to object to hearsay evidence regarding the
complainant=s fear that appellant would retaliate
against her or her family.[4]

The state of mind exception to the hearsay
rule provides that A[a] statement of the declarant=s then existing
state of mind@ is not excluded by the hearsay rule.  Tex.
R. Evid. 803(3).  The exception
does not extend to Aa statement of memory or belief to prove
the fact remembered or believed . . . .@  Id. 
A statement that the declarant was afraid of retaliation by the
defendant is admissible to show fear, but not that the defendant would
retaliate.  See Martinez v.
State, 17 S.W.3d 677, 688 (Tex. Crim. App. 2000); Williams v. State,
798 S.W.2d 368, 371 (Tex. App.CBeaumont 1990, no
pet.).








Because the statement was offered to show
that the complainant was afraid, not that appellant would retaliate against her
or her family, it was admissible under the state of mind exception to the
hearsay rule.  Trial counsel was thus not
ineffective for failing to object to it. 
See Thacker, 999 S.W.2d at 67.

C.      The
Extraneous Offense.

Third, appellant contends trial counsel
was ineffective for failing to object to the evidence of the extraneous offense
as being not relevant, unfairly prejudicial, and based on hearsay.

Evidence is relevant if it has Aany tendency to
make the existence of any fact that is of consequence to the determination of
the action more probable or less probable than it would be without the
evidence.@  Tex. R. Evid. 401.  However, relevant evidence may be excluded if
its probative value is substantially outweighed by the danger of unfair
prejudice.  Tex. R. Evid. 403.  In
determining whether the probative value of evidence of an extraneous offense is
outweighed by its prejudicial effect, we look to (1) how compellingly the
evidence serves to make a fact of consequence more or less probable, (2) the
potential the evidence has to impress the jury Ain some irrational
but nevertheless indelible way,@ (3) the time the
State will need to develop the evidence, and (4) the force of the State=s need for the
evidence.  Mozon v. State, 991
S.W.2d 841, 847 (Tex. Crim. App. 1999).

The evidence of the extraneous offense was
relevant because it tended to make it more probable that the complainant=s father was a
credible witness.  Without the evidence,
the jury was presented with the impression that he was being evasive and that
he was racially biased against appellant.








The probative value of the evidence of the
extraneous offense was not outweighed by its prejudicial effect.  The evidence compellingly presents a reason
for the witness=s feelings toward appellant.  Although the evidence may have impressed the
jury in some way, it was also necessary to correct the incorrect impression
left with the jurors by appellant=s questions during
cross-examination.  The evidence
comprises only slightly more than a page of the record, so the jury was not
distracted from consideration of the charged offense for any significant length
of time.  Finally, the evidence was the
only way to prove the reason the witness disapproved of appellant. 

Hearsay evidence is not generally
admissible despite its relevance.  Tex. R. Evid. 802.   A>Hearsay= is a statement,
other than one made by the declarant while testifying at the trial or hearing,
offered in evidence to prove the truth of the matter asserted.@  Tex.
R. Evid. 801(d).

The evidence of the extraneous offense was
not hearsay because it was not offered to prove that appellant had assaulted
the complainant in the past; rather, the evidence was admitted to prove the
complainant=s father disapproved of appellant because
of his belief that appellant had assaulted the complainant in the past.  Because the evidence of the extraneous
offense was admissible despite the possible objections as to relevance, unfair
prejudice, or hearsay, trial counsel was not ineffective for failing to raise
them.  See Thacker, 999
S.W.2d at 67.

D.      Opening
the Door

Fourth, appellant contends trial counsel
was ineffective for opening the door to evidence of the extraneous offense.

Effective assistance of counsel does not
mean errorless counsel, nor does it mean counsel judged effective in
hindsight.  Ex parte Felton, 815
S.W.2d 733, 735 (Tex. Crim. App. 1991). 
An error in trial strategy will be deemed ineffective only if counsel=s actions lack any
plausible basis.  Jensen v. State,
66 S.W.3d 528, 543 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d).








We cannot say the trial counsel lacked any
plausible basis in opening the door to evidence of the extraneous offense.  The evidence was arguably inadmissible; in
fact, appellant chose to argue it again on appeal.   If trial counsel had prevailed on his argument,
he would have succeeded in creating suspicion as to the motives of the State=s primary witness,
a plausible trial strategy.  See Josey
v. State, 97 S.W.3d 687, 696 (Tex. App.CTexarkana 2003, no
pet.) (AWe cannot say
attempting to discredit one . . . of the State=s primary
witnesses is improper trial strategy or otherwise falls below the level of an
objectively reasonable standard of conduct.@).  Although trial counsel did not succeed in his
strategy, we cannot say in hindsight that he was ineffective for attempting
it.  See Felton, 815 S.W.2d
at 735.  

Additionally, appellant did not file a
motion for new trial that alleged ineffective assistance of counsel.  Therefore, the record does not reflect trial
counsel=s reasons for
opening the door to evidence of the extraneous offense.  The Court of Criminal Appeals has repeatedly
cautioned appellate courts to Abe especially
hesitant to declare counsel ineffective based upon a single alleged
miscalculation during what amounts to otherwise satisfactory representation,
especially when the record provides no discernible explanation of the
motivation behind counsel=s actions.@  Thompson v. State, 9 S.W.3d 808, 814
(Tex. Crim. App. 1999).  In such
situations, ineffective assistance of counsel claims are better presented
within the framework of a post‑conviction writ of habeas corpus under
article 11.07 of the Code of Criminal Procedure.  See Tex.
Code Crim. Proc. art. 11.07; Bone v. State, 77 S.W.3d 828, 833B34 (Tex. Crim.
App. 2002); Ex parte Torres, 943 S.W.2d 469, 475B76 (Tex. Crim.
App. 1997).  We overrule appellant=s second issue.

We affirm the judgment of the trial court.

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

Judgment
rendered and Memorandum Opinion filed March 30, 2004.

Panel
consists of Chief Justice Hedges and Justices Fowler and Guzman.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  The trial
court admitted the following testimony:

Q.         Can
you tell us about a prior occassion when your daughter went to the hospital.

A.         Yes,
ma=am.  There was
another occassion when an ambulance had to be called and police had to be
called.  And my daughter basically looked
almost similar to the same she did this last time.  Two blackened eyes, her face all swollen up
and her lip.  And at the time, it was a
denial thing that he had done that.  But
I felt that it had happened, that he had hit her.

Q.         Mr.
Morgan, based on your conversations with your daughter and the paramedics at
that time, did you form a belief about who had done this to her?

A.         Yes,
ma=am.

Q.         Okay.  Who did you believe had done it?

A.         I
believe that [appellant] had hit my daughter at that time.

Q.         Was
that an influence in your making a decision that you didn=t want him to date her?

A.         Yes,
ma=am.  That was an
influence.  It sure was.





[2]  The impression
was created by the following testimony on cross-examination:

Q.         You
said, I didn=t approve of her hanging out with [appellant].  If you don=t know
him, why would you make that remark?

A.         I
guess just a parent=s intuition.  I
didn=t have a good feeling about him.  I heard the man=s name
several times without meeting him.  You
know, if I would have met a person the same time I hear the name, I could have
formed an opinion but I didn=t not know.  I
didn=t approve of it.

Q.         Is
it because he is a black man?

A.         No,
sir.

. . .

Q.         [Y]ou
just told me that you didn=t approve of your daughter dating [appellant].  So, why would you allow his son over?

A.         I
did not.  I asked my daughter to please
go ahead and leave with him.  I didn=t care for him to be there at the house because for
lots of reasons.  My wife didn=t approve of it, and I didn=t care for it. 
I didn=t want her to bring him around my other children.  I didn=t
approve of it.  I did ask her to leave.

Q.         Why
didn=t you approve of it? 
You said he=s never threatened you or your wife or anyCyour daughter, but you said you didn=t approve of him being around.  Why?

A.         Because
I justCit wasn=t my
wish.  It was my house and it wasn=t my wish.

Q.         You
got to have a reason.

A.         I
have wishes and reasons for many people ifCmy
daughter=s got other friends if they come to my house and I don=t approve of them or feel comfortable with them, I=ve asked her not to bring them there before.

Q.         You
don=t want to share the reasons why with us?

A.         Just
the fact that I didn=t care to have him there.





[3]  The testimony
was the following:

A.         The
first phone call come in and she only talked to my daughter briefly.  My daughter wanted my wife to call 911 for
help.  Then she kind of backed off and
decided at first not to; and after a little bit, we got disconnected from her.
. . .

. . .

Q.         Let=s go back and talk to your wife when she got off the
phone.  Did she tell you what had been
said on the phone?

A.         Yes,
ma=am.

Q.         All
right.  Did she tell you anything about
[the complainant=s] demeanor about how she was on the phone?

A.         She
just said that [the complainant] was upset and crying and said that [appellant]
had been hitting her and at that time that was about all we got out of her on
the first time.





[4]  The testimony
was the following:

Q.         Mr.
Morgan, has your daughter ever let you know whether or not she was afraid of
him?

A.         Yes,
ma=am.

Q.         And
what has [the complainant] told you?

A.         She=s afraid of the fact that [appellant] could retaliate
against her or the rest of our family. 
That was her exact words.