Opinion issued October 14, 2004










     


In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00142-CR




FREDERICK SIMON GRAVES, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 900503




O P I N I O N

          A jury convicted Frederick Simon Graves of aggravated sexual assault of a
child, and assessed punishment at eight years’ confinement and a $10,000 fine. On
appeal, Graves asserts the following six issues: (1) the trial court erred in admitting
the complainant child’s videotaped interview; (2) the trial court erred in overruling
Graves’s objection to the State’s jury argument referring to “rabbit trails”; (3) the trial
court erred in overruling Graves’s objection to the State’s jury argument referring to
extraneous offenses; (4) the trial court erred in not sua sponte including a reasonable-doubt jury instruction for evidence of extraneous offenses admitted during the
guilt/innocence phase; (5) the trial court erred in not sua sponte including a
reasonable-doubt jury instruction for extraneous offenses during the punishment
phase; and (6) trial counsel rendered ineffective assistance. We affirm.
Facts
          T.N., the complainant in this case, is an 11-year-old boy. Graves worked for
T.N.’s father, R.N., at a car dealership. Graves became a family friend and baby-sat
T.N. At trial, T.N. testified that Graves had fondled his penis on two separate
occasions. On the first occasion, Graves and T.N. were alone at R.N.’s house
watching a movie. While the two were lying underneath a blanket, Graves touched
T.N.’s penis. On the second occasion, Graves touched T.N.’s penis “on top” of
T.N.’s clothes while the two were alone in a car. Sometime later, T.N. and Graves
went to buy a digital camera.


 That day, while the two were alone at R.N.’s house
lying under a blanket in T.N.’s room, Graves performed oral sex on T.N. On
Christmas Eve 2001, T.N. reported to his father that Graves had assaulted him. 
          A forensic interviewer with the Children’s Assessment Center interviewed T.N. 
The trial court admitted a videotape of this interview into evidence. Both the
videotape and T.N.’s testimony include descriptions of Graves performing oral sex
on T.N. more than once on the day they bought the digital camera. At trial, T.N.
testified that it happened twice that day, while on the videotape, T.N. stated that it
happened three times that day. On the videotape, but not during trial, T.N. described
that Graves had commented on T.N.’s physical appearance. Both at trial and on the
videotape, T.N. described that Graves moved T.N. “up and down for like a little bit
of time.” Both at trial and on the videotape, T.N. described the two prior fondling
instances that took place at R.N.’s house and in the car. 
          Graves did not testify during the guilt/innocence phase. The defense called
other teenage boys who had become friends with Graves while racing motor bikes at
motorcross events. Billy Perran, a 17-year-old boy, testified on Graves’s behalf,
explaining that Graves is like a “father figure” to him. Billy explained that Graves
was never sexually inappropriate with him, although Graves had “many chances.” 
          During the punishment phase, the State introduced evidence of Graves’s prior
theft conviction. During closing argument, the State relied on the prior fondling acts
committed on T.N. to argue that the jury should enhance punishment.
Admission of the Videotaped StatementIn his first issue, Graves contends that the trial court erred in admitting T.N.’s
videotaped interview with a Children’s Assessment Center forensic interviewer
detailing his sexual contact with Graves. In addition to the sexual assault, during
direct examination, T.N. testified that Graves fondled him on two previous occasions:
(1) one evening at R.N.’s house while Graves visited and R.N. slept, and (2) one day
while the two were alone in a car. Sometime later, Graves performed oral sex on T.N.
at R.N.’s house while the two were alone. T.N. testified that he was lying under a
blanket watching television during the first fondling offense and the oral sex offense. 
During cross-examination, defense counsel impeached T.N. as follows:
Q.And at one point, isn’t it true that Gabby [the interviewer at the
Child’s Assessment Center] became concerned because you said
this had happened and nobody had removed your clothes. And
she said: How did your clothes get off? And you backed up and
said Fred took them off; is that right?
 
A.I – I don’t remember saying that. I just remember saying Fred
took them off. I’m not real sure.
 
Q.In any case, you didn’t mention anything about this occasion that
you’re telling us now, this earlier occasion under a blanket, did
you?
 
A.No, I didn’t. No, I didn’t.
 
Q.Okay. And you didn’t mention that to Gabby and you didn’t
mention that to the police officers when they interviewed you, did
you?
 
A.No. I just got interviewed by Gabby.
 
Q.When you talked to the police officer and when you talked to
Gabby, both times you were asked a lot of questions, weren’t
you?
 
A.Yeah. I was asked plenty of questions.
 
Q.And the questions went on for a long time?
 
A.The questions – yes sir, it did. Took about 45 minutes.
 
Q.And when they’re asking those questions, one of the things they
kept saying: Every time that you can think of that something
nasty or bad happened, please tell us about it. Is that correct?
 
A.No.
 
Q.But they made awfully sure you knew you should tell everything? 
 
A.Yeah. They made sure I should tell them what happened.
          To rehabilitate T.N.’s testimony, the State offered T.N.’s videotaped interview
at the Children’s Assessment Center. The defense objected, contending that the
videotape is not admissible under article 38.071, section 1 of the Code of Criminal
Procedure. Article 38.071 allows the admission of a videotaped statement of a child
witness under certain conditions, but section 1 provides:
This article applies only to a hearing or proceeding in which the court
determines that a child younger than 13 years of age would be
unavailable to testify in the presence of the defendant about an offense
defined by any of the following sections of the Penal Code: 
 
. . . 
 
(8) Section 22.021 (Aggravated Sexual Assault).

Tex. Code Crim. Proc. Ann. art. 38.071, § 1(8) (Vernon 2004).

          Article 38.071 thus specifically requires that the child be younger than 13 years
of age and unavailable to testify. The defense objected to the introduction of the
videotape on the basis that the State did not meet the requirements of article 38.071,
because T.N. was 13 years old at the time of trial and testified. 
          Our sister court addressed this issue in Jensen v. State, 66 S.W.3d 528, 535
(Tex. App.—Houston [14th Dist.] 2002, pet. ref’d), in which the trial court admitted
the child’s videotape in evidence even though the child testified at trial. The
Fourteenth Court of Appeals held that, under the plain-language of article 38.071, the
trial court erred in admitting the videotape because the child was available to testify,
and in fact, testified at trial. Id.


 We agree that the State did not satisfy the
requirements of article 38.071, because T.N. was 13 years old and testified at trial. 
          This case is distinguishable, however, from Jensen. Here, the trial court
admitted the videotape on a different basis—as a prior consistent statement of the
witness, after the witness had been impeached on cross-examination. Although the
trial court did not specifically mention Texas Rule of Evidence 801(e)(1)(B), it stated
the basis for its ruling as follows:
[T]he complaining witness and all the witnesses have been
impeached with regards to their prior consistent and inconsistent
statements. I find it ironic that we’ve done that, and now we have a
statement that the witness has given. I’ll anticipate the first note from
the jury is going to be: Where is the child’s statement?
 
I’m going to find that since his prior statements and ability to
recall are in issue, I’m going to allow the videotape. And there’s no
violation of confrontation clause because you had your chance to cross-examine him, as well as and specifically with regard to those statements
when he gave them, what he said and to whom. 
          A prior statement may be admitted if it is “consistent with the declarant’s
testimony and is offered to rebut an express or implied charge against the declarant
of recent fabrication or improper influence or motive.” Tex. R. Evid. 801(e)(1)(B). 
The defense challenged T.N.’s credibility, raising doubts as to fabrication or improper
influence. For example, as set forth above, the defense impeached T.N., questioning
him whether he told the Child Assessment Center interviewer or the police about the
time Graves fondled him under a blanket. The defense also implied that the
interviewer asked leading questions during the entire 45-minute interview, thus
implying that T.N.’s testimony was not credible. Additionally, the defense implied
that T.N.’s conduct with other children, including his two-year-old brother, were the
real issues during T.N.’s therapy sessions, and thus, that T.N. recently had fabricated
some of the incidents. The defense also questioned T.N. about his school drama
class, implying that T.N. was a good “actor,” and perhaps acting on the witness stand. 
We hold that the videotape is admissible under rule of evidence 801(e)(1)(B) as a
prior consistent statement. See Dowthitt v. State, 931 S.W.2d 244, 264 (Tex. Crim.
App. 1996) (upholding admission of videotape, in capital murder case, as prior
consistent statement under rule 801(e)(1)(B));


 see also Wylie v. State, 908 S.W.2d
307, 310 (Tex. App.—San Antonio 1995, pet. ref’d) (holding that videotape was
admissible under rule 801(e)(1)(B) as prior consistent statement because defense
challenged child’s credibility). 
          Moreover, defense counsel introduced specifics as to the context of the
videotape on cross-examination and questioned the propriety of the interviewer’s
technique. Counsel’s global references to the interview raised issues about the nature
of the videotape, and opened the door to admission of the tape as evidence. See Delk
v. State, 855 S.W.2d 700, 704 (Tex. Crim. App. 1993) (noting that a witness “opens
the door” to otherwise irrelevant past criminal history if his testimony creates a “false
impression” of law-abiding behavior). 
Improper Jury Argument During Guilt/Innocence
          In his second issue, Graves contends the trial court erred in overruling his
objection to the State’s closing argument during the guilt/innocence phase. Graves
argues that the State’s comments about a “rabbit trail” struck at Graves over the
shoulders of his counsel. The State argued:
[The State]: [The defense] can trash us all day long. Don’t get thrown
down a rabbit trail. Don’t follow the defense’s distractions. They want
to put up all the smoke and mirrors so you do not see the truth.
 
[Defense counsel]: Your Honor, I have to object to this argument. 
We’ve let it go on a while, but it’s inviting the jury to strike the
defendant over the shoulder of the defense counsel.
 
The Court: That will be overruled.
 
          The State may not use closing argument to strike at a defendant over the
shoulders of his counsel or accuse that counsel of bad faith. Fuentes v. State, 664
S.W.2d 333, 335 (Tex. Crim. App. 1984). The State responds that its jury argument
answered the argument of opposing counsel, who had argued to the jury that the
prosecutor had not offered other witnesses to show that Graves is “bad,” and that the
State “had an answer for everything.”
          The Court of Criminal Appeals analyzed a similar jury argument in Mosley v.
State, 983 S.W.2d 249, 258-59 (Tex. Crim. App. 1998). The prosecutor in Mosley
indicated that the defense counsel was asking the jury to “take a side road, a series of
side roads, rabbit trails, and a rabbit trail that will lead . . . to a dead-end.” Id. at 258. 
The court held that such “mildly inappropriate” comments, strikingly similar to the
comments in this case, constituted harmless error. Id. at 260. The court cautioned
that defense counsel’s “legitimate arguments” cannot serve as a basis for permitting
prosecutorial comments that “cast aspersion on defense counsel’s veracity.” Id. at
259 (citing Dinkins v. State, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995)). Although
the rule is not precise, the court explained that “a prosecutor runs a risk of improperly
striking at a defendant over the shoulder of counsel when the argument is made in
terms of defense counsel personally and when the argument explicitly impugns
defense counsel’s character.” Id. Mosley requires that we review claims of harm
arising from improper jury argument under the following three-part test: (1) the
severity of the misconduct; (2) the measures adopted to cure the misconduct; and (3)
the certainty of conviction without the misconduct. Id. 
          In applying the first factor, the severity of the misconduct here, as in Mosley,
is small, or “mildly inappropriate.” See id. at 260. The comments did not accuse the
defense counsel of lying or suggest that any evidence was manufactured. See id. 
Rather, they responded to opposing counsel’s argument that the State had acted
inappropriately. Accordingly, the severity of the misconduct does not weigh heavily
in Graves’s favor. 
          In applying the second factor, we consider the measures adopted to cure the
misconduct. As in Mosley, the trial court here did not take any curative action. As
the Mosley court noted, however, the jury is in a position to evaluate the truthfulness
of the prosecutor’s assertion, and such comments could backfire if the jury disagrees
with them. Id. Regarding the third factor, we look at the certainty of conviction
absent the misconduct. The case lacked physical evidence of a sexual assault, and
only the complainant actually witnessed the sexual assault. T.N. testified at trial,
however, and his statements are consistent with R.N.’s testimony as the outcry
witness.


 The jury found T.N.’s testimony to be credible. In the larger context of the
State’s entire argument, the statements about “rabbit trails” did not inject new facts. 
In a case such as this one that largely turns on credibility, this argument could not
have caused a different result. Given the evidence and the mild nature of the
inappropriate comments, we conclude that the comments do not cause uncertainty in
the jury’s conviction. After examining the argument in light of the Mosely factors,
we hold that the prosecutor’s comments were mildly inappropriate, and insufficient
to warrant a new trial. 
 
 
Improper Jury Argument During Punishment
          In his third issue, Graves contends the trial court erred in overruling his
objection to the State’s jury argument, during the punishment phase, regarding
“implied” extraneous offenses. 
          During the guilt/innocence phase, Billy Perran testified on Graves’s behalf. 
Billy testified that he met Graves while racing motor bikes at a motorcross event. He
explained that Graves is a “really good friend,” like a “father figure.” Graves took
Billy and other young boys to Europe to watch racing events. He paid for the
apartment where Billy and his mom previously had lived, and bought Billy’s
furniture, which Graves now keeps at his house. He also paid for Billy’s racing
lessons and offered to pay for Billy to go college in England to learn about the motor
sport industry. Billy spent the night at Graves’s house “about ten to twelve times.” 
During those overnight visits, Billy slept on the bed and Graves slept on the floor. 
Billy testified that Graves was never sexually inappropriate with him, although
Graves “had many chances.” 
          During closing argument at the punishment phase, the prosecutor argued as
follows:
[The State]: [Graves] is a 37-year-old man who took advantage of an 11-year-old and tested the waters and took it one step further and one step
further. Who knows where he would have gotten if [T.N.] wasn’t brave
enough to come forward. If [T.N.] had the same structure he had and his
parents had – these boys don’t have that kind of family. They don’t
have that kind of support. Who is Billy Perran going to tell what
happened to him? He has a free ticket out of town. A free ticket to
college. A free ticket to a dream to be a famous racer.

[Defense counsel]: Objection to that being outside the evidence. Mr.
Perran denied it ever happened.
 
The Court: That will be overruled.
 
[The State]: Why would Billy Perran ever tell you, so that he can live in
the situation he’s in now? He’s got a lot to lose by telling. All those
kids do. 
 
          One permissible area of jury argument is to make reasonable deductions from
the evidence. Campbell v. State, 610 S.W.2d 754, 756 (Tex. Crim. App. 1980). 
Counsel is allowed wide latitude in drawing inferences from the evidence, so long as
the inferences drawn are reasonable, fair, legitimate, and offered in good faith. 
Gaddis v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). The purpose of
closing argument is to assimilate the evidence to assist the fact-finder in drawing
proper conclusions from the evidence. Id. at 400. The jury is then free to accept or
reject such conclusions and inferences. Id. 
          “A prosecutor is allowed to argue that the witnesses for the defense are not
worthy of belief.” Satterwhite v. State, 858 S.W.2d 412, 425 (Tex. Crim. App. 1993). 
Jury argument that vouches for or questions the credibility of a witness is proper if
it involves a reasonable deduction from the evidence. George v. State, 117 S.W.3d
285, 288 (Tex. App.—Texarkana 2003, pet. ref’d). 
          Billy Perran testified on Graves’s behalf. Having done so, his credibility as a
witness became an issue and was the proper subject of comment by the prosecutor. 
See Satterwhite, 858 S.W.2d at 425. The prosecutor reasonably could have deduced
that Billy had a financial incentive to lie—if Graves went to jail, he would no longer
pay for Billy’s housing, motorcross races, trips to Europe, and his college education. 
We conclude that it was not improper during closing argument for the prosecution to
contend that Billy could have a financial incentive to testify favorably for Graves. 
Accordingly, the trial court did not err in overruling Graves’s objection. 
Reasonable-Doubt Instruction During Guilt/Innocence
          In his fourth issue, Graves contends the trial court erred in not instructing the
jury during the guilt/innocence phase that the State must prove extraneous offenses
beyond a reasonable doubt. In support of this contention, Graves asserts that the
State introduced evidence that he committed extraneous offenses not alleged in the
indictment, including the two fondling offenses against T.N. and “inappropriate”
relationships with other young boys. Graves asserts that the trial court sua sponte
should have included a reasonable-doubt instruction for any extraneous offense
evidence admitted during the guilt/innocence phase, even though Graves’s counsel
admittedly did not make such a request. 
          In cases of sexual assault of minors, article 38.37, section 2 of the Code of
Criminal Procedure provides: 
Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence,
evidence of other crimes, wrongs, or acts committed by the defendant
against the child who is the victim of the alleged offense shall be
admitted for its bearing on relevant matters, including: 
 
(1)the state of mind of the defendant and the child; and
 
(2)the previous and subsequent relationship between the
defendant and the child.
          Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (Vernon Supp. 2004).


 
          In support of his position, Graves cites Huizar v. State, 12 S.W.3d 479, 483-85
(Tex. Crim. App. 2000), in which the Court of Criminal Appeals holds that, in the
punishment phase of non-capital cases, a trial court is statutorily required under Code
of Criminal Procedure article 37.07, section 3(a), but not constitutionally required,
to instruct a jury sua sponte that it may not consider extraneous-offense evidence, in
assessing punishment, unless it finds the extraneous offenses have been proven
beyond a reasonable doubt.


 Id.; see also Bolden v. State, 73 S.W.3d 428, 431 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref’d). 
          Article 37.07, section 3(a), entitled, “Evidence of Prior Criminal Record in all
Criminal Cases After a Finding of Guilty,” governs the admissibility of evidence at
punishment in all non-capital cases. See Rogers v. State, 991 S.W.2d 263, 265 (Tex.
Crim. App. 1999) (“[i]n addition to the Rules of Evidence, Article 37.07 Section 3(a)
governs the admissibility of evidence during the punishment stage”); see also Kutzner
v. State, 994 S.W.2d 180, 188 (Tex. Crim. App. 1999) (“[non-capital cases are
governed by Article 37.07, which requires that extraneous offenses be proven beyond
a reasonable doubt”); Sonnier v. State, 913 S.W.2d 511, 521 n.5 (Tex. Crim. App.
1995) (noting that Article 37.07 “governs the punishment charge in non-capital
trials”). Extraneous offenses thus get a limiting instruction under article 38.37 during
the guilt/innocence phase. A reasonable-doubt instruction under article 37.07 applies
to punishment because it is the only time those offenses can be used to enhance the
punishment of the charged offense. 
          Graves urges this court to extend the duty discussed in Huizar to the
guilt-innocence phase of trial. We declined to do so in Rodriguez v. State, 137
S.W.3d 228, 231 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding that trial
court did not err). Following our court’s decision in Rodriguez, and noting that
article 37.07 expressly relates only to the punishment phase of a trial, we hold that the
trial court in this case did not err in failing to give, sua sponte, a reasonable-doubt
instruction for extraneous offenses during the guilt-innocence phase.



Reasonable-Doubt Instruction During Punishment
          In his fifth issue, Graves contends the trial court erred in failing to instruct the
jury, sua sponte, during the punishment phase, that the State must prove extraneous
offenses beyond a reasonable doubt in order to consider such offenses in assessing
punishment, even though Graves’s counsel admittedly did not make such a request. 
          In Huizar, the Court of Criminal Appeals held that a trial court must include
a reasonable-doubt instruction regarding extraneous offenses during the punishment
phase, even if the defense does not request it. Huizar, 12 S.W.3d at 483-85. Graves
contends that, during the punishment phase, the State introduced extraneous offense
evidence, in particular: (1) T.N.’s testimony that Graves fondled him on two previous
occasions, (2) R.N.’s testimony implying that Graves had “inappropriate”
relationships with other young boys, including Billy Perran, and (3) jail cards,
judgments, and sentences showing Graves’s prior convictions.
          Fondling
          Graves contends that the trial court sua sponte should have included a beyond
a reasonable doubt jury instruction, because at the guilt/innocence phase, T.N.
testified that Graves fondled him in addition to committing the sexual assault of oral
sex, as alleged in the indictment. During the guilt/innocence phase, T.N. testified that
Graves touched “his private parts” with his hands on two different occasions before
he performed oral sex on T.N. T.N. made similar statements during his videotaped
interview. 
          Fondling falls within the category of indecency with a child under Penal Code
section 21.11(c). Tex. Pen. Code Ann. § 21.11(c) (Vernon 2003). Oral sex is an
aggravated sexual assault under Penal Code section 22.021. Tex. Pen. Code Ann.
§ 22.021 (Vernon Supp. 2004). Separate instances of fondling are different offenses
under the penal code, not merely multiple occasions of the same offense. See Brown
v. State, 6 S.W.3d 571, 575-76 (Tex. App.—Tyler 1999, pet. ref’d). 
          The State responds that the trial court did not err, because the State introduced
no new extraneous offense evidence during the punishment phase. Unlike the Huizar
case, the State here introduced the fondling offenses through T.N.’s testimony during
the guilt-innocence phase. Compare Huizar v. State, 966 S.W.2d 702, 705 (Tex.
App.—San Antonio 1998), rev’d, 12 S.W.3d 479 (Tex. Crim. App. 2000) (noting that
State introduced new evidence of extraneous sexual assault offenses during
punishment). Courts have required the reasonable-doubt instruction, however,
regardless of whether the evidence of extraneous acts had been introduced during the
guilt-innocence or the punishment phase of the trial. See Allen v. State, 47 S.W.3d
47, 50 (Tex. App.—Fort Worth 2001, pet. ref’d); see also Guzman v. State, No.
04-02-00198-CR, 2003 WL 22336052, *4 (Tex. App.—San Antonio Oct. 15, 2003,
pet. ref’d) (not designated for publication).
          Moreover, the State referred to the extraneous offense evidence on cross-examination during the punishment phase, and suggested that these extraneous
offenses merited a heavier sentence. The State cross-examined Graves’s stepmother
during the following exchange:
Q.Are you aware there’s three incidents?
A.Three incidents of oral sex?
Q.Of improper behavior of a child of a sexual — 
A.I was talking about the main charge, which is oral sex.
Q.You knew there was three then?
A.I do now.
          In addition, the State argued during closing argument to the jury: 
Remember how it started? Remember how the predator set this
up? First, he just tries on the outside of the clothing and touches him in
the car. That was the start. Then this predator, in his mind, goes one
step further. He touches [T.N.] underneath his clothes as they’re laying
down watching a Halloween movie. Then the predator takes it one step
further and performs oral sex on [T.N.].
The State thus relied upon extraneous offense evidence to argue that the jury should
enhance punishment. We hold that, under Huizar, the trial court should have
instructed the jury pursuant to article 37.07 during the punishment phase. 
          Under Huizar, we next determine whether the error was harmful under the
standard set forth in Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). 
See Huizar, 12 S.W.3d at 483-85; see also Ellison v. State, 86 S.W.3d 226, 227-28
(Tex. Crim. App. 2002) (remanding cause to court of appeals for harm analysis of
trial court’s failure sua sponte to give reasonable-doubt instruction). Jury charge
error does not require reversal unless it is so egregious that the defendant is denied
a fair and impartial trial. Almanza, 686 S.W.2d at 171. “Errors which result in
egregious harm are those which affect ‘the very basis of the case,’ deprive the
defendant of a ‘valuable right,’ or ‘vitally affect a defensive theory.’ ” Hutch v. State,
922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (quoting Almanza, 686 S.W.2d at 172). 
“[T]he actual degree of harm must be assayed in light of the entire jury charge, the
state of the evidence, including the contested issues and weight of probative evidence,
the argument of counsel, and any other relevant information revealed by the record
of the trial as a whole.” Almanza, 686 S.W.2d at 171. 
          The State introduced no physical evidence of a sexual assault, nor did anyone
other than the complainant witness the sexual assault. T.N., however, testified at
trial, and his statements are consistent with R.N.’s testimony as the outcry witness. 
The jury found T.N.’s testimony to be credible. Moreover, the range of punishment
in this case was 5 to 99 years or life. Although the prosecutor discussed the
extraneous offenses during closing argument, he did not seek the maximum
punishment available.


 The jury assessed punishment at eight years’ confinement, far
below the maximum, and only three years above the minimum. See Jones v. State,
111 S.W.3d 600, 609-10 (Tex. App.—Dallas 2003, pet. ref’d) (holding that trial
court’s failure to give reasonable-doubt instruction sua sponte during punishment
phase for extraneous offenses offered during punishment was harmless error in part
because the jury assessed punishment far below maximum available, despite State’s
plea for maximum); Tabor v. State, 88 S.W.3d 783, 788-89 (Tex. App.—Tyler 2002,
no pet.) (holding that trial court’s failure sua sponte to give reasonable-doubt
instruction during punishment phase about “pen packets” offered during punishment
was harmless error because sentence imposed was well within punishment range and
prosecutor had asked for greater sentence). Graves contends that, had the trial court
properly instructed the jury, Graves might have received community supervision. 
Graves’s motion for new trial, however, fails to adduce evidence as to how the failure
to instruct the jury resulted in harmful error. After reviewing the record in this case
in its totality, we cannot conclude that the trial court’s failure to give an article 37.07
reasonable-doubt instruction deprived Graves of a fair and impartial punishment
hearing. 
          Inappropriate Relationships With Other Boys
          Graves also contends that the State introduced evidence “implying” that Graves
had inappropriate relationships with other young boys, including Billy Perran. These
boys testified on behalf of Graves, explaining that Graves had never been sexually
inappropriate with them, nor had they witnessed Graves engaging in any
inappropriate sexual behavior. Billy specifically testified that Graves was never
sexually inappropriate with him, although Graves “had many chances.” R.N., T.N.’s
father, testified that Graves’s behavior with Billy was “very peculiar,” such as “riding
around the countryside when he should be in school. Putting him up in an apartment. 
And telling other people that that’s his son.” R.N. further testified that he was “not
alleging” that Graves used Billy for “sexual reasons.” None of these statements
constitutes evidence of an extraneous offense. Rather, each of the witnesses denied
knowledge of any improper conduct with other boys. Accordingly, with respect to
Graves’s relationships with other boys, the trial court did not err in failing to instruct
the jury, sua sponte, that the State must prove extraneous offenses beyond a
reasonable doubt. See Bluitt v. State, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004)
(holding that “such an instruction is a useless act if no unadjudicated offenses have
been introduced”). 
          Prior Convictions
          During punishment, the State introduced evidence of Graves’s prior theft
conviction. Article 37.07, section 3, of the Code of Criminal Procedure provides that,
after a finding of guilt, evidence may be offered by either party as to any matter that
the court deems relevant to sentencing, including: (1) the prior criminal record of the
defendant; (2) the general reputation of the defendant; (3) the character of the
defendant; (4) an opinion regarding the reputation of the defendant; (5) the
circumstances of the offense on trial; and (6) extraneous offenses and bad acts that
are shown beyond a reasonable doubt to have been committed by the defendant or for
which he could be held criminally responsible. Tex. Code Crim. Proc. Ann. art.
37.07, § 3(a)(1) (Vernon Supp. 2004). In Bluitt, the Court of Criminal Appeals held
that a trial court does not err in refusing to give a beyond a reasonable-doubt
instruction if, as here, the defendant’s criminal behavior “was in the form of prior
offenses which had been subjected to judicial testing under the proper burden and the
burden had been met.” 137 S.W.3d at 54. The court explained:
The criminal record of the defendant is not grouped with
extraneous offenses, and therefore we presume that the legislature did
not intend to require the same burden of proof that it attached to
extraneous, unadjudicated offenses. While the prior convictions must
be properly proved, to require that prior convictions be re-proved
beyond a reasonable doubt would be an absurd result, as the very fact of
conviction is evidence that the burden of proving guilt beyond a
reasonable doubt has already been met in a prior proceeding. The
critical issue is that testing of the proof. If an offense has been subject
to such scrutiny and the burden of proof has been met, regardless of
whether the judicial proceeding concluded with a final conviction, it is
part of a defendant’s criminal record, and Art. 37.03, § 3, does not
require further proof of guilt beyond a reasonable doubt.

Id.; see also Willover v. State, 84 S.W.3d 751, 753 (Tex. App.—Houston [1st Dist.]
2002, pet. ref’d). We hold that the trial court did not err in failing to give a
reasonable-doubt instruction for Graves’s prior convictions.
Ineffective Assistance of Counsel
          In his sixth issue, Graves contends his trial counsel was ineffective because
counsel failed to request a reasonable doubt extraneous offense jury instruction
during the guilt/innocence and punishment phases.
          To establish ineffective assistance of counsel, an appellant must show that (1)
trial counsel’s representation was so deficient that it fell below the objective standard
of professional norms and (2) but for counsel’s error, there is a reasonable probability
that the result of the proceedings would have been different. Strickland v.
Washington, 466 U.S. 668, 687-96, 104 S. Ct. 2052, 2064-69 (1984). Graves has the
burden to prove ineffective assistance of counsel and to rebut the presumption that
counsel was acting according to sound trial strategy. Id. at 466 U.S. at 689, 104 S.
Ct. at 2065.
          Guilt/Innocence Phase
          Following our court’s decision in Rodriguez, we hold that the trial court did not
err in failing to give, sua sponte, a reasonable-doubt instruction for extraneous
offenses during the guilt-innocence phase. See Rodriguez, 137 S.W.3d at 231. 
Graves was not entitled to the instruction; therefore, his counsel was not ineffective
for failing to request it. See Hardin v. State, 951 S.W.2d 208, 211 (Tex.
App.—Houston [14th Dist.] 1997, no pet.) (holding that failure to request jury
instruction about manner in which evidence was obtained was not error and thus did
not constitute ineffective assistance because defendant was not entitled to
instruction). 
          Punishment Phase
          With regard to the punishment phase, we hold that, under Huizar, the trial court
should have instructed the jury pursuant to article 37.07 during the punishment phase
about the prior fondling offenses. See Huizar, 12 S.W.3d at 483-85. Graves was
therefore entitled to a reasonable-doubt instruction during the punishment phase. 
          As set forth above in issue five, we hold that the absence of a reasonable-doubt
instruction during the punishment phase did not deprive Grave of a fair and impartial
trial. See Almanza, 686 S.W.2d at 171. Graves therefore fails to satisfy the second
prong of Strickland—that the result of the proceedings would have been different had
counsel requested the instruction. See Allen v. State, 47 S.W.3d 47, 54-55 (Tex.
App.—Fort Worth 2001, pet. ref’d) (holding that defendant did not satisfy second
prong of Strickland because court analyzed that error was harmless under Almanza). 
Graves does not show how the results of his proceedings would have been different
if counsel would have objected to the jury charge and the trial court had given the
reasonable-doubt instruction for extraneous offenses. See id. We hold that Graves
fails to show he received ineffective assistance of counsel. 
Conclusion
          We affirm the judgment of the trial court. 
 
 
                                                             Jane Bland
                                                             Justice
 
Panel consists of Justices Taft, Jennings, and Bland.Publish. Tex. R. App. P. 47.2(b).