

NUMBER 13-12-00676-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOSE SANTOS CASAS,                                                                      Appellant,

v.

THE STATE OF TEXAS,                                                                      Appellee.

### On appeal from the 357th District Court of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides and Perkes
### Memorandum Opinion by Justice Garza

A jury found appellant, Jose Santos Casas, guilty of assault family violence with a previous family violence conviction, *see* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(A) (West, Westlaw through 2013 3d C.S.), enhanced by two prior felony convictions to a first-degree felony offense, *see id.* § 12.42(d) (West, Westlaw through 2013 3d C.S.).

The jury sentenced him to thirty-seven years' imprisonment. By six issues, appellant contends: (1) the evidence is insufficient to support his conviction; (2) the evidence is insufficient to show that he was previously convicted for family violence; (3) the trial court erred in admitting evidence of appellant's non-adjudicated conduct at the punishment phase of trial in violation of rule of evidence 609(a), *see* TEX. R. EVID. 609(a); (4) the trial court violated his confrontation clause rights by admitting evidence gathered by the Texas Crime Information Center (TCIC) and the National Crime Information Center (NCIC), which contained testimonial hearsay; (5) he received inadequate notice of the State's intention to seek an enhancement of his sentence; and (6) he received ineffective assistance of counsel. We affirm.

## I. BACKGROUND

Eli Cano, an officer with the Cameron County Sheriff's Office, testified that he responded to a 911 call around 9:30 p.m. on the evening of June 8, 2012. When he arrived at the scene, Officer Cano observed a crying woman, later identified as Blanca Mendez, outside the house. Mendez had cuts on her face and was covered in blood. Mendez told Officer Cano that appellant had assaulted her with a knife and his hands and feet. The knife was recovered outside where the assault occurred. Two other officers joined Officer Cano. The officers knocked on the door of the residence, and an adult woman opened the door. Appellant tried to close the door to prevent the officers' entry. Appellant was then detained and placed in a patrol car.

Baltazar Ramirez Jr., an officer with the Primera Police Department, testified that when he arrived at the residence, Officer Cano was questioning Mendez, who was covered in blood. Mendez was standing next to her vehicle; the windows on the vehicle had been broken. Mendez told the officers that appellant was in the house. When a

2

woman opened the door, Officer Ramirez assisted in detaining appellant.

Eloy Rincones, an officer with the Cameron County Sheriff's Department, testified that he spoke with Mendez at the scene of the assault. Officer Rincones stated that when Mendez was asked who inflicted her injuries, she said, "him, him, my husband. Him and his brother." Officer Rincones identified appellant as Mendez's "husband."

Orlando Garcia, an officer with the Cameron County Sheriff's Office, testified that he also responded to the family disturbance on the evening of June 8, 2012. Officer Garcia stated that after appellant was arrested, the officers attempted to locate appellant's brother, Juan, at the residence, but were unsuccessful. Officer Garcia began making a report of the incident by having Mendez complete a "family violence packet." In completing the packet, Mendez requested a protective order against appellant. Officer Garcia identified several photographs of appellant taken at the Cameron County detention facility. The photographs show dried blood on appellant's hand, shorts, and foot.

Sandra Loyde, a paramedic, testified that she and a partner responded to the call for emergency service for an assault. Loyde stated that Mendez had suffered a one-inch laceration under her right eye. Mendez described a past history of domestic abuse by appellant. On this occasion, Mendez said that appellant punched her and she sustained multiple blunt head injuries. Mendez reported that appellant and his brother had beaten her. Although Loyde recommended that Mendez be transported for further examination, Mendez declined any further examination or treatment.

Mendez testified that she had known appellant "all [her] life," that she was once his common-law wife, and that they had been in an "off and on" dating relationship as long as she had known him. On the evening of June 8, Mendez went to appellant's house to take him some food; appellant, his brother Juan, and their mother (Mrs. Casas) were at

3

the house. Mendez stated that she, appellant, and Juan were sitting in Juan's vehicle when she and Juan began arguing over a remark Mendez made about Mrs. Casas. Mendez testified that she exited Juan's vehicle and attempted to leave by walking toward her own vehicle. Mendez had been drinking heavily and fell to the ground before she reached her vehicle. While she was still on the ground, Juan hit her in the eye, which "busted open"; he continued to hit her on the head. While trying to get up, she heard someone bashing the windows of her vehicle. Mendez stated that when she got up, she saw Juan, but did not see appellant. She could hear appellant shouting at Juan.

Mendez testified that she does not remember calling 911 and does not remember what she said that evening because she had been drinking for days and had not slept. The prosecutor played a portion of the 911 call; Mendez admitted that on the call, she reported that appellant had attacked her and that Juan had helped. Mendez said she does not recall talking to police officers that evening and does not recall giving a statement. Mendez identified the handwritten statement that she provided on the evening of the assault and admitted that it said that appellant and Juan had beaten her. At trial, however, she testified that only Juan hit her. She conceded that she had asked for a protective order against appellant, but testified that she did not recall having made the request. Mendez's handwritten statement was admitted into evidence over defense counsel's hearsay objection. Mendez admitted that appellant had hit her on prior occasions and had been convicted and sentenced to jail time for a 2010 assault against her.

On cross-examination, Mendez stated that she did not recall appellant hitting her. She admitted that when she fell to the ground, it "could have been" more than one person hitting her. She emphasized that she did not remember appellant hitting her, she only

4

remembered that Juan hit her.

On redirect examination, Mendez admitted that on prior occasions when appellant assaulted her, she did not want to press charges. When asked how many times she had declined to press charges, Mendez said three or four times, but that she had "lost count."

The jury considered two counts: assault with a deadly weapon and assault family violence with a prior conviction for family violence. The jury returned a verdict of "not guilty" on the assault with a deadly weapon charge and a verdict of "guilty" on the assault family violence with a prior conviction for family violence charge. After hearing punishment-phase evidence, the jury imposed a sentence of thirty-seven years' imprisonment.

## II. SUFFICIENCY OF EVIDENCE

By his first issue, appellant contends that the evidence is insufficient to support his conviction. By his second issue, appellant contends the evidence is insufficient to show that he was previously convicted of an assault involving family violence.

### A. Standard of Review and Applicable Law

We review claims of evidentiary insufficiency under "a rigorous and proper application of the *Jackson* standard of review." *Brooks v. State*, 323 S.W.3d 893, 906–07, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Brooks*, 323 S.W.3d at 898–99 (characterizing the *Jackson* standard as: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt"). The fact-finder is the

5

exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge, not the charge actually given. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011); *Malik v. State*, 953 S.W.W2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Byrd*, 336 S.W.3d at 246; *Malik*, 953 S.W.2d at 240. Measuring the sufficiency of the evidence against the hypothetically correct jury charge ensures that a defendant will be acquitted when the State actually fails to meet its burden of proof rather than when the State includes a simple error in the indictment or jury charge. *Malik*, 953 S.W.2d at 240. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404–05 (Tex. Crim. App. 2000).

Under the law applicable here, the State was required to prove that (1) appellant intentionally, knowingly, or recklessly caused bodily injury to Mendez, a dating partner, and (2) before the commission of the present offense, appellant was previously convicted of committing an assaultive offense against a dating partner under chapter 22 of the penal

6

code. *See* Tex. Penal Code Ann. § 22.01(a), (b)(2)(A). A "dating relationship" means "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." Tex. Fam. Code Ann. § 71.0021(b) (West, Westlaw through 2013 3d C.S.).

## B. Discussion

Appellant argues that the evidence is insufficient to support his conviction because Mendez testified that she did not recall appellant hitting her and only recalled that Juan struck her.

At trial, Mendez testified that she was intoxicated on the evening of the assault and did not recall whether appellant hit her; she recalled only that Juan hit her. However, Officer Cano testified that, on the evening of the assault, Mendez told him that appellant had attacked her. Similarly, Officer Rincones testified that when Mendez was asked who assaulted her, she identified appellant and Juan. In her victim statement, taken the night of the assault, Mendez stated that appellant and Juan both hit her. In addition, the jury heard the recording of the 911 call, in which Mendez identified appellant (her "ex-husband" and "boyfriend") as one of her assailants. During the call, Mendez said that both appellant and Juan attacked her.

As fact-finder, the jury was the exclusive judge of the credibility of the witnesses and of the weight to be given to their testimony. *See Anderson*, 322 S.W.3d at 405; *Lancon*, 253 S.W.3d at 707. To the extent that Mendez's trial testimony differed from her earlier statements, the jury was entitled to reconcile such conflicts in the evidence. *See Anderson*, 322 S.W.3d at 405; *Lancon*, 253 S.W.3d at 707. The jury was free to believe the version of events Mendez gave the evening of the assault and to disbelieve her trial testimony. *Lancon*, 253 S.W.3d at 707. We hold that the evidence is sufficient to support

7

appellant's conviction. We overrule appellant's first issue.

By his second issue, appellant contends the evidence is insufficient to establish that he was previously convicted of a family violence assault. Specifically, appellant argues that the evidence is insufficient to show that the victim in his prior assault conviction was a "family member" or a statutorily protected person.

We disagree. The record includes a February 9, 2011 judgment of conviction in which appellant pleaded "no contest" to an assault committed against Mendez on October 29, 2010. The judgment contains the trial court's "affirmative finding of family violence." The complaint relating to the October 29, 2010 offense identifies Mendez as "a family or household member or a person with whom the defendant has or has had a dating relationship." Moreover, Mendez admitted at trial that appellant assaulted her on October 29, 2010, and that at that time, they had an "off and on" dating relationship. We hold that the evidence is sufficient to establish appellant's prior conviction for family violence. We overrule appellant's second issue.

## II. ADMISSION OF PRIOR CRIMINAL RECORD EVIDENCE

By his third issue, appellant contends the trial court erred in admitting, during the punishment phase of trial, evidence of his prior convictions and non-adjudicated conduct in violation of rule of evidence 609(a). *See* TEX. R. EVID. 609(a).[1] Specifically, appellant complains that "[s]ome of the arrests from the NCIC [National Crime Information Center]

---

[1] Texas Rule of Evidence 609(a) provides:

For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

TEX. R. EVID. 609(a).

or TCIC [Texas Crime Information Center] which were unadjudicated were offered by the State and resulted in an improper conviction."

Appellant's argument is without merit. Section 3 of article 37.07 of the code of criminal procedure provides that, at the punishment phase of trial, the State may offer evidence as to any matter the court deems relevant to sentencing, including the defendant's prior criminal record, extraneous crimes, or bad acts, "regardless of whether [the defendant] has been previously charged with or finally convicted of the crime or act." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West, Westlaw through 2013 3d C.S.). The trial court's decision was not an abuse of discretion. We overrule appellant's third issue.

### III. CONFRONTATION CLAUSE CLAIM

By his fourth issue, appellant complains that the admission of certain evidence of his prior criminal record, including information from the NCIC and TCIC, violated his Confrontation Clause rights because "the entries consisted of testimonial facts" made by someone other than the testifying officer. Appellant does not identify any specific testimony, nor does he provide a record reference identifying the complained-of evidence.

At the punishment phase of trial, Eloy Galvan, an investigator with the Cameron County District Attorney's Office, testified regarding appellant's prior criminal record. Officer Galvan explained that he obtained appellant's criminal history information by using the NCIC/TCIC database. After the State offered evidence of appellant's conviction for arson in 2005 (State's Exhibit 32), defense counsel objected on the basis that "no proper foundation [was] laid." The trial court overruled the objection. The State offered evidence of other prior convictions (State's Exhibits 33 through 38). Defense counsel repeated the objection of "no proper foundation," and the trial court overruled the objection.

9

A Confrontation Clause claim is subject to the requirement that in order to preserve error for appellate review, there must be a timely and specific trial objection to the complained-of evidence. *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010); *see* TEX. R. APP. P. 33.1(a)(1)(A). Moreover, "[a] complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial." *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). Here, appellant objected to the State's evidence at trial on grounds that it lacked a "proper foundation," but did not object on Confrontation Clause grounds. The issue has therefore not been preserved for our review. *See id.* We overrule appellant's fourth issue.

### IV. SUFFICIENCY OF ENHANCEMENT NOTICE

By his fifth issue, appellant contends his due process rights were violated when he received inadequate notice of the State's intention to seek an enhancement of his sentence.

"[F]or purposes of conducting a due-process analysis, the determination of whether proper notice of enhancements was given does not require that notice be given within a particular period of time before trial or before the guilt phase is completed." *Pelache v. State*, 324 S.W.3d 568, 577 (Tex. Crim. App. 2010). "[A] defendant's federal constitutional due-process rights are not violated by post-guilt, pre-punishment-phase notice of the State's intent to enhance his punishment with a prior conviction." *Ex parte Parrott*, 396 S.W.3d 531, 537 (Tex. Crim. App. 2013) (citing *Pelache*, 324 S.W.3d at 577). "Even when a defendant receives notice after he has been convicted, his due-process rights are not violated as long as notice is sufficient to enable him 'to prepare a defense to them,' and he is afforded an opportunity to be heard." *Id.* (quoting *Pelache*, 324 S.W.3d at 577) "In determining whether appellant received sufficient notice of the State's intent

10

to enhance punishment, we look to the record to identify whether appellant's defense was impaired by the timing of the State's notice." *Pelache*, 324 S.W.3d at 577.

Here, the September 26, 2012 indictment included an enhancement allegation identifying: (1) a 1998 conviction for felony driving while intoxicated; and (2) a 2005 conviction for attempted arson. At the punishment phase, which began on October 9, 2012, the State gave notice of its intent to seek enhancement of punishment based on: (1) a 2005 conviction for attempted arson; (2) a 1998 conviction for driving while intoxicated, two or more priors; and (3) a 1991 conviction for forgery. Thus, appellant had notice of two of the three enhancement charges prior to the beginning of trial.

Before the punishment phase began and outside the presence of the jury, defense counsel objected to the State's enhancements on several grounds, including that "no proper notice [was] given." The State noted that it filed a notice to seek enhancement of punishment on September 13, 2012.[2] The trial court overruled defense counsel's objection, and the punishment phase began.

As noted, two of the three enhancement charges were included in the September 26, 2012 indictment, and appellant's pre-trial notice of those charges is clearly sufficient. *See Pelache*, 324 S.W.3d at 577. As to the third charge (the 1991 forgery conviction), we note that appellant's counsel did not request a continuance or suggest that he needed time to prepare a defense to the enhancement allegation. *See id.* ("[W]hen a defendant has no defense to the enhancement allegation and has not suggested the need for a continuance in order to prepare one, notice given at the beginning of the punishment

---

[2] The indictment in the present case was filed on September 26, 2012. The record suggests that the case was originally indicted prior to September 13, 2012. During the discussion regarding notice at the beginning of the punishment phase, the prosecutor stated, "this Court already ruled that all motions carried forward into the new cause number[.]"

11

phase satisfies the federal constitution.") (quoting *Villescas v. State*, 189 S.W.3d 290, 294 (Tex. Crim. App. 2006)). We conclude that the State's enhancement notice was sufficient to put appellant on notice of the nature of the enhancement allegations. We overrule appellant's fifth issue.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

By his sixth issue, appellant contends he was denied effective assistance of counsel. Specifically, appellant contends that his trial counsel: (1) "fail[ed] to adequately protect [a]ppellant's rights by insisting on discovery requests"; (2) "fail[ed] to object to the introduction of expert hearsay evidence"; (3) "fail[ed] to object to hearsay testimonial statements" in the NCIC/TCIC criminal history records and a medical report; (4) "open[ed] the door to the admission of hearsay evidence during the guilt/innocence phase thereby destroying the credibility of [a]ppellant and prejudicing his defense"; (5) "fail[ed] to object to hearsay improper statements"; and (6) failed to preserve error in the jury charge.

"To obtain a reversal of a conviction under the *Strickland* test, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding." *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient performance means that 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Ex parte Napper*, 322 S.W.3d 202, 246 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 687). "The prejudice prong of *Strickland* requires showing 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 248 (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is

12

a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). "[E]ach case must be judged on its own unique facts." *Davis*, 278 S.W.3d at 353.

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). A reviewing court will not second-guess legitimate tactical decisions made by trial counsel. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate . . . ."). Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions. *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851. An allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814 n.6.

The section of appellant's brief devoted to this issue does not provide a single citation to the record regarding any of the allegations of ineffective assistance. Nothing is preserved for review if the appellant does not direct the court to the proper place in the record where we may find the complained of error. *See* TEX. R. APP. P. 38.1(i); *Jensen v. State*, 66 S.W.3d 528, 545 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) ("Because appellant's argument on this point of error contains no citations to the record, he has

waived appellate review of his complaint."); *Crowder v. State*, No. 13-10-00324-CR, 2011 WL 578763, at *2 (Tex. App.—Corpus Christi Feb. 17, 2011, no pet.) (mem. op., not designated for publication) (same). Because appellant did not provide this Court with any record citations, he has waived review of this issue. *See Jensen*, 66 S.W.3d at 545.

Moreover, appellant has not addressed the second prong of *Strickland*: whether there is a reasonable probability that but for trial counsel's alleged errors, the result would have been different. *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694. Therefore, appellant has not met his burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson*, 9 S.W.3d at 813. We overrule appellant's sixth issue.

## VI. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).


Delivered and filed the
24th day of April, 2014.