In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00187-CR
NO. 09-13-00188-CR
NO. 09-13-00189-CR
NO. 09-13-00190-CR
NO. 09-13-00191-CR

_____

**ERIC EUGENE COOPER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 258th District Court**
**Polk County, Texas**
**Trial Cause No. 21945 (Counts 1-5)**

**MEMORANDUM OPINION**

A jury found Eric Eugene Cooper guilty of five counts of sexual assault of

A.G., a fourteen year old child.[1] *See* Tex. Penal Code Ann. § 22.011(a)(2) (West

_____

[1]To protect the privacy of the child complainant, we identify the child by
using the initials of the pseudonym assigned to the child in the indictment, as the
Texas Constitution grants crime victims "the right to be treated with fairness and
with respect for the victim's dignity and privacy throughout the criminal justice
process[.]" Tex. Const. art. I, § 30(a)(1).

1

2011). Cooper pleaded "true" to the allegation of a prior felony conviction, and the jury assessed punishment at ninety-nine years in prison for each count and assessed a $10,000 fine. Cooper was ordered to serve the five sentences consecutively. He raises nine issues on appeal.

SUFFICIENCY OF THE EVIDENCE

In issues one through five, Cooper challenges the sufficiency of the evidence supporting his convictions. He argues the evidence at trial was insufficient to prove beyond a reasonable doubt that he sexually assaulted A.G. as alleged in the five-count indictment. Essentially, Cooper maintains in his first five issues that, because of the lack of physical evidence or a witness to the alleged sexual assaults, the evidence is insufficient to support the convictions for sexual assault of a child.[2]

The "*Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to

---

[2]A person commits the offense of sexual assault of a child if the person intentionally or knowingly (1) causes the penetration of the anus or sexual organ of a child by any means; (2) causes the penetration of the mouth of a child by the sexual organ of the actor; (3) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; (4) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or (5) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor. *See* Tex. Penal Code Ann. § 22.011(a)(2). "'Child' means a person younger than 17 years of age." *Id.* § 22.011(c)(1) (West 2011).

2

support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In evaluating the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Id.* at 902 n.19; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The jury is the ultimate authority on the credibility of witnesses and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 894; *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). We give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the jury resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778. We may not substitute our judgment concerning the weight and credibility of

the evidence for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

At trial, A.G. testified that she and Cooper attended the same church and that he began talking to her about her family and how they had certain circumstances in common because they were both adopted. According to A.G., she and Cooper began secretly communicating through text messaging and cell phone calls. She testified that on June 8, 2011, when she was fourteen years old and Cooper was thirty-five years old, Cooper approached her in a classroom at the church and sexually assaulted her with his sexual organ. Cooper threatened to kill A.G.'s parents[3] if she told them about the sexual encounter.

A.G. testified that Cooper came over to her house when she was alone and her parents were at church, but she could not remember the date. She explained that Cooper "used his tongue" on her sexual organ, penetrated her sexual organ, and fondled her breasts. She testified that the following Sunday they met at church in the same classroom as the first encounter and that Cooper penetrated her again with his sexual organ and his hand. After A.G. and her mother had an argument, A.G. told her parents about the sexual assaults by Cooper. Her mother confiscated A.G.'s phone, and then they contacted the police.

---

[3]At trial, A.G. referred to her adoptive parents with whom she had lived since she was two years old as her "mom and dad," but explained that they were not actually her biological parents.

A.G. further testified that Cooper let A.G. drive his truck, gave A.G. birth control pills, jewelry, and two pair of boxer shorts, and that he told her that they could move away and start a life together in Germany. A.G. turned over the birth control pills, jewelry, and boxer shorts to law enforcement. A forensic scientist testified that the DNA profile from the swabs of the two pair of boxer shorts was consistent with a mixture of A.G. and Cooper. The forensic scientist was unable to obtain a DNA profile from the other items A.G. provided to law enforcement. Cooper's wife identified the boxer shorts turned in by A.G. as the boxer shorts Cooper's wife had purchased for Cooper. She also identified two of the necklaces A.G. provided to law enforcement.

In sexual abuse cases involving a child, the testimony of the victim alone is sufficient to support a conviction. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); *West v. State*, 121 S.W.3d 95, 111 (Tex. App.—Fort Worth 2003, pet. ref'd); *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Furthermore, the jury is the sole judge of the credibility of the witnesses and is free to accept or reject some, all, or none of the evidence presented by either side. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Viewing the evidence in the light most favorable to the verdict, we conclude

that the evidence was legally sufficient to support Cooper's convictions. *See Brooks*, 323 S.W.3d at 902 n.19. We overrule issues one through five.

INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

In issue six, Cooper asserts that he was denied effective assistance of counsel during the guilt/innocence phase of the trial. Specifically, Cooper complains that his counsel "did not object to testimony regarding extraneous bad conduct by Cooper, and elicited, in the course of cross-examination, testimony regarding extraneous bad conduct by Cooper, and testimony suggesting that Cooper had committed the offenses for which he was being tried." To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy a two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). An appellant must demonstrate a reasonable probability that, but for his counsel's errors, the outcome would have

6

been different. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). "Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Id.*

Cooper must prove that there was no plausible professional reason for the specific acts or omissions of his counsel. *See id.* at 836. Furthermore, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The bare record on direct appeal is usually insufficient to demonstrate that "counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." *Bone*, 77 S.W.3d at 833 (citation omitted).

Cooper filed a motion for new trial in which he stated that trial counsel provided ineffective assistance. No affidavit was filed with the motion. The record does not reflect that Cooper obtained a hearing on his motion. The record is silent as to defense counsel's reason for the following allegations of ineffectiveness raised by Cooper on appeal: (1) not objecting to Cooper's wife's testimony that Cooper impersonated a peace officer when she met him and that Cooper had

assaulted her when she confronted him about his questionable internet activities; (2) eliciting testimony during cross-examination of a witness that the witness had been concerned when he saw Cooper embrace A.G.; and (3) eliciting testimony during cross-examination of A.G.'s adoptive mother that she believed A.G.'s sexual assault allegations against Cooper.

With a silent record, we cannot presume that counsel's conduct constituted ineffective assistance. *See Thompson*, 9 S.W.3d at 813-14; *Bone*, 77 S.W.3d at 833. Furthermore, Cooper has failed to establish that, but for counsel's alleged errors and omissions, the outcome of his trial would have been different. *See Bone*, 77 S.W.3d at 833, 836-37. Even if trial counsel had objected to the complained-of testimony of Cooper's wife, and even if counsel had not elicited the complained-of testimony during cross-examination of the witness and A.G.'s mother, the evidence was still legally sufficient, based on A.G.'s testimony alone, for the jury to have found Cooper guilty. *See* Tex. Code Crim. Proc. Ann. art. 38.07; *Garcia*, 563 S.W.2d at 928; *West*, 121 S.W.3d at 111; *Jensen*, 66 S.W.3d at 534. Issue six is overruled.

## EXCLUSION OF TESTIMONY AT PUNISHMENT PHASE

In issue seven, Cooper argues that the trial court erred during the trial's punishment phase in *sua sponte* preventing Cooper from testifying regarding the

8

circumstances giving rise to his acquaintance and telephone conversations with A.G. Cooper contends that the trial court prevented Cooper from testifying about evidence that he initiated his relationship with A.G. to help her, because it was evidence tending to mitigate punishment.

During the punishment phase, the following exchange occurred between defense counsel and Cooper:

> [Defense Counsel]: Did you have telephone conversations with [A.G.]?
>
> [Cooper]: Yes.
>
> [Defense Counsel]: And some of those were late in the evening, correct?
>
> [Cooper]: Correct.
>
> . . . .
>
> [Defense Counsel]: And can you tell the jury a little bit about how did you and [A.G.] become acquainted or become to the point where you were talking on the telephone? How did that come about?
>
> [Cooper]: Just in church there was a time that it was brought up in church that [A.G.'s adoptive parents] were having problems with [A.G.], and we're looking to find her another place to live if they couldn't solve the problem. I stood up in church and told them don't give up because I'm adopted. I've went through some of the same things she was going through, even though I was adopted by

9

> my grandparents and she was adopted by another member of her biological mother's family, that there was things I went through. Like in school - -

At that point, the trial court stopped the testimony and instructed defense counsel that "this is not what this Court finds to be punishment testimony" and that defense counsel should limit his questions to those "relating to the punishment hearing portion of this trial." Defense counsel did not object to the exclusion of the testimony.

Prior to this exchange, Cooper had already denied having a sexual encounter with A.G. at the church, denied ever being at A.G.'s house, denied telling A.G. they would run away to Germany, and denied giving A.G. a diamond ring or his boxer shorts. He agreed that the boxer shorts admitted at trial belonged to him, but he testified that he had donated them to the church because they did not fit. He was allowed the opportunity to explain how he and A.G. began having phone conversations. He was also allowed to testify that he had spoken up for A.G. at church, and that he identified with the problems A.G. had experienced because he too had been adopted.

Based upon the record before us, we disagree with Cooper's contention that he was prevented from testifying so that the jury could "have understood that

10

Cooper's initial instinct was to help [A.G.,]" or that he was denied the opportunity to present mitigating evidence that he "initiated his relationship with [A.G.] . . . out of concern for her well-being[.]" Furthermore, at the time the trial court stopped Cooper's testimony and directed defense counsel to only ask questions relating to punishment, the trial court could have reasonably believed that Cooper was beginning to discuss a topic that the trial court could have determined was not relevant to the punishment proceeding, and defense counsel did not argue at that time that the excluded testimony was evidence tending to mitigate punishment. Considering the trial court's broad discretion to control its proceedings, the trial court did not err in stopping the testimony and directing defense counsel to proffer questions related to the punishment proceeding. *See* Tex. Gov't Code Ann. § 21.001(b) (West 2004) ("A court shall require that proceedings be conducted with dignity and in an orderly and expeditious manner and control the proceedings so that justice is done."); *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 199 (Tex. Crim. App. 2003). Issue seven is overruled.

PUNISHMENT

In issues eight and nine, Cooper contends the trial court lacked authority to order, and erred in ordering, Cooper to serve his five sentences consecutively. Cooper concedes that section 3.03(b)(2)(A) of the Texas Penal Code provides that

11

the sentences of a defendant convicted of more than one sexual-assault-of-a-child offense arising out of the same criminal episode may run concurrently or consecutively. *See* Tex. Penal Code Ann. § 3.03(b)(2)(A) (West Supp. 2013).[4] He argues, however, that the language of section 3.03 does not specifically authorize a trial court to make that determination, that the language is "sufficiently broad to encompass the defendant making that determination[,]" and that he requested that his sentences be served concurrently. He further maintains that article 42.08(a) of the Texas Code of Criminal Procedure gives the trial court discretion to order sentences to be served consecutively when "the same defendant has been convicted in two or more cases[,]" and he contends he was convicted in only one case. *See* Tex. Code Crim. Proc. Ann. art. 42.08(a),(c) (West Supp. 2013).

Cooper also argues that, by ordering that Cooper's sentences be served consecutively, the court violated his right to trial by jury under both article I, section 10 of the Texas Constitution, and article 37.07, section 2(b) of the Texas Code of Criminal Procedure. *See* Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 37.07 (West Supp. 2013).

We review a trial court's decision to "stack" or cumulate sentences for an abuse of discretion. *See* Tex. Code Crim. Proc. Ann. art. 42.08(a); *Nicholas v.*

---

[4]Because the amendments are not material to this case, we cite to the current version of the relevant statutes.

12

*State*, 56 S.W.3d 760, 765 (Tex. App. —Houston [14th Dist.] 2001, pet. ref'd). As long as the law allows the imposition of cumulative sentences, the trial judge has absolute discretion to stack sentences. *Nicholas*, 56 S.W.3d at 765. Under article 42.08, the trial judge has the discretion to cumulate the sentences for two or more convictions. Tex. Code Crim. Proc. Ann. art. 42.08(a). A trial court's ability to cumulate sentences, however, is limited by section 3.03(b) of the Texas Penal Code:

> (b) If the accused is found guilty of more than one offense arising out of the same criminal episode, the sentences may run concurrently or consecutively if each sentence is for a conviction of:
> . . . .
> (2) an offense:
>> (A) under Section 33.021 or an offense under Section 21.02, 21.11, 22.011, 22.021, 25.02, or 43.25 committed against a victim younger than 17 years of age at the time of the commission of the offense regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of more than one section[.]

Tex. Penal Code Ann. § 3.03(b)(2)(A). On appeal, Cooper "does not dispute that he was convicted of five offenses arising out of the same criminal episode, or that the offenses were all sexual assault of a child." We conclude that Cooper was

13

convicted of offenses for which the trial court may cumulate sentences under section 3.03(b)(2)(A). *See id*.; Tex. Code Crim. Proc. Ann. art. 42.08(a).

In *Barrow v. State*, the Court of Criminal Appeals held that "placing the decision whether to run multiple sentences concurrently or consecutively with the trial court instead of the jury does not violate the Sixth Amendment right to a jury trial." *Barrow v. State*, 207 S.W.3d 377, 380 (Tex. Crim. App. 2006). In deciding this issue, the Court of Criminal Appeals explained:

> It is well established that the constitutional right to a jury trial does not encompass the right to have the jury assess punishment. Texas is one of the few states that allow defendants the privilege, by statute, of opting for jury assessment of punishment. Even so, it is left to the trial court to determine whether multiple sentences will run consecutively or concurrently. As the court of appeals pointed out, the Texas Legislature has assigned the decision to cumulate, *vel non*, in Section 3.03 of the Penal Code and Article 42.08 of the Code of Criminal Procedure, to the trial court.

*See id.* (footnotes omitted). The Court of Criminal Appeals also noted in its discussion of the procedural history of the case that the court of appeals, in an unpublished opinion and in response to Barrow's argument that section 3.03 fails to designate who makes the decision to run the sentences consecutively rather than concurrently (the same argument made by Cooper), explained that article 42.08 vests discretion in the trial court to order concurrent or consecutive sentences. *See*

14

*Barrow*, 207 S.W.3d at 378. Cooper acknowledges this holding in *Barrow*, but urges us to "revisit" it in light of his argument that "placing the decision with the trial court violates article I § 10 of the Texas Constitution." We decline to do so.

Cooper fails to cite any case law in support of his argument that the trial court did not have authority to stack the sentences because Cooper was convicted in "only one case – No. 21945[,]" and not in "two or more cases." And, his argument is directly contradictory to the decision in *Barrow*. *See id.* at 378-80 (affirming trial court's decision to order defendant's sentences on his convictions on two counts of sexual assault of a child to run consecutively after jury assessed punishment at fifteen years for one count and twenty years for the other count).

Cooper asserts that even if the court had the authority to order Cooper's five sentences to be served consecutively, the court erred in doing so because "[w]ithin the context of sexual assault of a child, the offenses for which Cooper was convicted were not so horrible as to justify 495 years confinement." The decision to impose concurrent or cumulative sentences was within the discretion of the trial court, and "so long as the law authorizes the imposition of cumulative sentences, a trial judge has absolute discretion to stack sentences." *Nicholas*, 56 S.W.3d at 764-65 (Abuse of discretion generally will be found only if trial court imposes consecutive sentences where the law requires concurrent sentences, where the

15

court imposes concurrent sentences but the law requires consecutive ones, or where the court otherwise fails to observe statutory requirements pertaining to sentencing.).

As a general rule, punishment that is assessed within the statutory range for an offense is neither excessive nor unconstitutionally cruel or unusual. *Kirk v. State*, 949 S.W.2d 769, 772 (Tex. App.—Dallas 1997, pet. ref'd); *see also Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984) (General rule is that as long as sentence is within proper range of punishment, it will not be disturbed on appeal.). "Subject only to a very limited, 'exceedingly rare,' and somewhat amorphous Eighth Amendment gross-disproportionality review, a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal." *Ex parte Chavez*, 213 S.W.3d 320, 323-24 (Tex. Crim. App. 2006) (footnote omitted); *see also Jarvis v. State*, 315 S.W.3d 158, 162 (Tex. App.—Beaumont 2010, no pet.). The trial court imposed punishment within the statutory range for each of the offenses for which Cooper was convicted. *See* Tex. Penal Code Ann. § 12.32 (West 2011) (First-degree felony shall be punished by imprisonment for life or for any term of not more than ninety-nine years or less than five years.). The sentence

is not subject to a sufficiency of the evidence review on appeal. *See generally Jarvis*, 315 S.W.3d at 161-62.

Moreover, a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, must be preserved for appellate review by a timely request, objection, or motion stating the specific grounds for the ruling desired. *Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd) (citing *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996)); *see* Tex. R. App. P. 33.1(a). His complaint was not preserved for appellate review. Issues eight and nine are overruled.

We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on May 15, 2014
Opinion Delivered July 9, 2014
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.